# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

---

No. 96-2027

---

| | |
|---|---|
| Gary C. Gilmour, | * |
| | * |
|     Petitioner - Appellant, | * |
| | * |
|     v. | * Appeal from the United States |
| | * District Court for the |
| Rusty Rogerson, Warden, Iowa | * Southern District of Iowa. |
| Medical Classification Center; | * |
| Thomas Miller, Attorney General | * |
| of the State of Iowa, | * |
| | * |
|     Respondents - Appellees. | * |

---

Submitted: January 17, 1997

Filed: June 27, 1997

---

Before LOKEN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and GUNN,[*] District Judge.

---

LOKEN, Circuit Judge.

In <u>New York v. Ferber</u>, 458 U.S. 747, 765 (1982), the Supreme Court upheld a broad child pornography statute but cautioned that, "[a]s with obscenity laws, criminal responsibility may not be imposed without some element of scienter on the part of the defendant." In <u>United States v. X-Citement Video, Inc.</u>, 513 U.S. 64, 78, 115 S. Ct. 464, 472 (1994), the Court cited that caution as

---

[*]The HONORABLE GEORGE F. GUNN, JR., United States District Judge for the Eastern District of Missouri, sitting by designation.

"suggest[ing] that a [child pornography] statute completely bereft of a scienter requirement as to the age of the performers would raise serious constitutional doubts."  In this habeas case, we must explore those constitutional doubts, for Iowa inmate Gary C. Gilmour argues that his conviction for sexual exploitation of a seventeen-year-old minor violates the First Amendment because the Iowa courts denied him a mistake-of-age defense.  Like the district court,[1] we disagree and therefore affirm.

## I.

The Supreme Court of Iowa described the criminal conduct at issue in State v. Gilmour, 522 N.W.2d 595, 596 (Iowa 1994):

> Gilmour is a professional photographer in Davenport specializing in weddings and "boudoir" work.  He was introduced to a seventeen-year-old woman named Cassandra by her boyfriend.  Cassandra . . . and Gilmour met at a bar where they discussed the possibility of her posing for nude photographs. . . . Gilmour suggested that he could arrange for Cassandra to dance at bachelor parties and perform sex for money at those parties.  According to Cassandra, Gilmour took nude photographs of her and her boyfriend engaging in sex acts . . . .  Gilmour testified that he had asked Cassandra's boyfriend how old she was and was told that she was twenty-two.  He further claimed to have independently verified Cassandra's age by viewing her driver's license.

> Cassandra testified that she later told Gilmour that she wanted to obtain the explicit photos taken of her and the negatives.  Gilmour suggested that she could have the photographs if she would agree to seduce a pizza deliveryman.  Arrangements were made to have Cassandra order a pizza, meet the deliveryman at the door in the nude, and entice him to have sex.  This plan was carried out.  Gilmour, however, refused to return the photographs unless Cassandra also had sex with him.  That also

---

[1]The HONORABLE CHARLES R. WOLLE, Chief Judge of the United States District Court for the Southern District of Iowa.

occurred, and Gilmour still retained at least some of the photographs.

The jury convicted Gilmour of pandering, a conviction not at issue on this appeal, and also convicted him of violating Iowa Code § 728.12(1). That statute defines sexual exploitation of a minor to include any person who

> employs, uses, persuades, induces, entices, coerces, knowingly permits, or otherwise causes a minor to engage in a prohibited sexual act or in the simulation of a prohibited sexual act if the person knows, has reason to know, or intends that the act or simulated act may be photographed, filmed, or otherwise preserved in a negative, slide, book, magazine, or other print or visual medium.

Prior to his trial, and again on direct appeal, Gilmour argued that this statute must be read to include knowledge of the minor's age as an element of the offense in order to save it from First Amendment infirmity. Otherwise, Gilmour reasoned, the statute would impermissibly chill expressive activity protected by the First Amendment, namely, the production of adult pornography. Rejecting that contention, the trial court excluded all evidence that Gilmour mistakenly believed Cassandra to be an adult.

The Iowa Supreme Court affirmed, concluding (i) that knowledge of age is not an element of the crime of sexual exploitation of a minor, (ii) that mistake of age is not a defense, and (iii) that so construed, § 728.12(1) does not violate the First Amendment because the statute is intended to combat child pornography and is aimed at conduct rather than expression. Gilmour, 522 N.W.2d at 597-98. The district court denied Gilmour's habeas petition and he appeals.

"Few areas of criminal law pose more difficulty than the proper definition of the *mens rea* required for any particular crime." United States v. Bailey, 444 U.S. 394, 403 (1980). In general in this country, infamous crimes are construed as requiring proof of *mens rea* -- the "concurrence of an evil-meaning mind with an evil-doing hand" -- even when the statutes defining those crimes are silent on the question. Morissette v. United States, 342 U.S. 246, 251 (1952). In construing criminal statutes that protect children from sexual predators, however, the child's age is a long-established exception to the general rule that proof of *mens rea* is required; "the victim's actual age [is] determinative despite defendant's reasonable belief that the girl had reached the age of consent." Id. at 251 n.8. Thus, absent First Amendment considerations, it seems clear that Iowa may constitutionally define criminal sexual exploitation of a child so as to preclude inquiry into whether defendant believed the child was an adult.[2]

Turning to those First Amendment considerations, we find long-standing Supreme Court concern with the *mens rea* required in obscenity cases, where conduct is criminal if it involves obscene materials but is constitutionally protected if it does not. In an early obscenity case, the Court struck down a state statute that made booksellers strictly liable for possessing obscene writings. "[I]f the bookseller is criminally liable without knowledge of the contents [of an obscene book]," the Court explained, "he will tend

---

[2]Of course, were this a federal statute, legislative silence on this *mens rea* issue would raise interpretive questions such as those debated in Liparota v. United States, 471 U.S. 419 (1985). But those questions are not of constitutional dimension, and we are bound by the Iowa Supreme Court's construction of the state statute. See N.A.A.C.P. v. Button, 371 U.S. 415, 432 (1963).

to restrict the books he sells to those he has inspected; and thus the State will have imposed a restriction upon the distribution of constitutionally protected as well as obscene literature." Smith v. California, 361 U.S. 147, 153 (1959). As defined in later cases, this constitutional *mens rea* requirement is satisfied if the defendant knows the contents of the obscene materials and their "character and nature"; he need not know they are legally obscene. Hamling v. United States, 418 U.S. 87, 123-24 (1974).

In Ferber, the Court comprehensively addressed the subject of child pornography. A Manhattan shopkeeper sold two films depicting young boys masturbating to an undercover police officer. He was convicted of promoting a sexual performance by a child, defined to include "any performance . . . which includes sexual conduct by a child less than sixteen years of age." Ferber, 458 U.S. at 751. The Court granted certiorari to consider the constitutionality of that statute. Noting that the exploitation of children in the production of pornography is both harmful and pervasive, the Court declared that "[t]he prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." Id. at 757. The Court held that child pornography is unprotected by the First Amendment and generally defined child pornography as extending beyond obscene materials to include "works that *visually* depict [suitably limited and described] sexual conduct by children below a specified age." Id. at 764. The Court held that the New York statute was not substantially overbroad and may be applied to those who knowingly distribute child pornography.

By defining child pornography to include sexually explicit films and photographs that are not obscene, Ferber set the stage for the issue in this case. Gilmour concedes that in photographing Cassandra he produced unprotected child pornography. He does not

challenge the purposes behind banning the production of child pornography -- to reduce financial incentives that encourage sexual exploitation of children and to deter production of visual depictions that exacerbate psychological harm to the child victims.  See Ferber, 458 U.S. at 757-59. But the photographing of nude adults engaged in sexually explicit conduct retains First Amendment protection unless in fact obscene.  Indeed, however offensive to most, the sale and distribution of such materials is a large, thriving industry.  Therefore, Gilmour argues, absent a mistake-of-age defense, the Iowa statute will chill producers of protected adult pornography from photographing young adults.  To prevail on this theory, Gilmour must show that the statute's overbreadth is "substantial."  Ferber, 458 U.S. at 769; see Broadrick v. Oklahoma, 413 U.S. 601 (1973).  Analysis of this question requires, as additional background, review of two relevant post-Ferber decisions.

On appeal, Gilmour relies almost entirely on United States v. United States Dist. Court, 858 F.2d 534 (9th Cir. 1988).  In that case, the government sought a writ of mandamus prohibiting the district court from admitting evidence that a sixteen-year-old girl hired to appear in a pornographic movie had perpetrated a massive fraud on the "adult entertainment industry" by passing herself off as an adult.  At issue was a federal statute, 18 U.S.C. § 2251(a), which prohibits the production of materials depicting a minor engaged in sexually explicit activity if the defendant knows that the visual depiction will be transported in commerce. A divided Ninth Circuit panel held that, although § 2251(a) does not provide for a mistake-of-age defense, the First Amendment requires writing one into the statute.  Otherwise, producers of adult pornography

> will almost certainly be deterred from producing such materials
> depicting youthful-looking adult actors; such

-6-

> actors may have considerable difficulty in finding producers willing to cast them; [and] audiences wishing to view films featuring such actors would be denied the opportunity.

858 F.2d at 540. The dissenting judge concluded that the statute serves an important government interest, little legitimate speech is chilled if producers of adult pornography must accurately ascertain a young-looking actor's age, and § 2251(a) is therefore constitutional as written.

Following District Court, the Supreme Court decided X-Citement Video. At issue was another federal child pornography statute, 18 U.S.C. § 2252(a), which prohibits, for example, knowingly shipping child pornography in commerce. The question, as the Court explained it, was whether to give the statute its "most natural grammatical reading," in which case the word "knowingly" modifies only the requirement that the offending child pornography be shipped in interstate commerce. Noting that this construction "would produce results that were not merely odd, but positively absurd," the Court concluded that "knowingly" instead modifies all elements of the crime, including the age of the minor depicted in the pornographic film. 513 U.S. at 69, 115 S. Ct. at 467. In discussing this issue, the Court expressly noted that § 2251(a), the statute at issue in District Court, lacks this scienter requirement, citing to the footnote in which the Ninth Circuit panel majority held that the government need not prove scienter as part of its case. 513 U.S. at 76 n.5, 115 S. Ct. at 471 n.5. In ignoring the more significant holding in District Court -- that mistake-of-age is a constitutionally mandated defense -- it seems apparent to us that the Supreme Court intentionally avoided that issue. Thus, whether the First Amendment *mandates* use of the mistake-of-age defense in a child pornography prosecution under

federal or state law remains an open question outside the Ninth Circuit.

## III.

As <u>X-Citement Video</u> illustrates, the *mens rea* question is especially complex because it may affect each element of the crime. For example, the Iowa statute at issue here has two explicit *mens rea* elements. To be guilty of a violation, one must actively entice, coerce, or knowingly permit a minor to engage in the prohibited sexual act, and one must know, have reason to know, or intend that the illicit activity may be photographed. Gilmour is arguing for an additional *mens rea* factor to prevent the Iowa statute from chilling substantial protected speech -- reasonable belief that the sexually exploited victim was in fact an adult is a defense to the charge. This question requires weighing the State's interest in prohibiting unprotected conduct, such as Gilmour's; the precision with which the State has isolated unprotected from protected activity; and the resulting extent to which protected First Amendment activity will be deterred (chilled) by the prohibition. For three reasons, we part company with the panel majority in <u>District Court</u> and conclude that the Iowa statute, as applied to Gilmour, is not constitutionally infirm.

First, not only is the State's interest in banning the sexual exploitation of children very strong, but the mistake-of-age defense is directly contrary to that interest. As in this case, the defense will typically be proved by evidence that the minor was a willing, perhaps deceitful participant in producing pornographic films and photos. The State may legitimately protect children from self-destructive decisions reflecting the youthful poor judgment that makes them, in the eyes of the law, "beneath the age of

consent." One can argue that sexually sophisticated seventeen-year-olds like Cassandra do not need or even do not deserve such protection, but that is a legislative question. See United States v. Freeman, 808 F.2d 1290, 1292 (8th Cir.), cert. denied, 480 U.S. 922 (1987). We deal here only with the constitutional limits on the State's power to protect. The State's interest in discouraging minors from posing as adults by eliminating the mistake-of-age defense is entitled to great weight.

Second, the Iowa statute as construed is aimed at producers of child pornography, rather than those who distribute the resulting pornographic materials. See Gilmour, 522 N.W.2d at 598. When dealing with child pornography, strict criminal liability has a markedly different chilling effect on producers as opposed to distributors of that pornography. Unlike most distributors, the sexually exploitive producer deals directly with the child victim, like the statutory rapist who has traditionally been denied a mistake-of-age defense. In this information age, a prudent photographer or movie producer may readily and independently confirm the age of virtually every young-looking model. See Outmezguine v. State, 641 A.2d 870, 878 (Md. 1994).

Prior Supreme Court decisions and comments on these First Amendment *mens rea* issues have always focused on the chilling effects of broadly exposing pornography or obscenity distributors to criminal liability. For example, Smith involved the prosecution of a bookseller for carrying obscene literature in his store. Ferber's general reference to "some element of scienter" was in the context of a statute that criminalized the production *and distribution* of child pornography. X-Citement Video was a prosecution of movie producers, but the federal statute at issue extended to distributors as well; thus, the Court was required to

construe the statute's *mens rea* element in this broader context, and in doing so it expressly noted that

> in the criminalization of pornography production . . . the perpetrator confronts the underage victim personally and may reasonably be required to ascertain that victim's age. The opportunity for reasonable mistake as to age increases significantly once the victim is reduced to a visual depiction, unavailable for questioning by the distributor or receiver.

513 U.S. at 72 n.2, 115 S. Ct. at 469 n.2 (a point the Court reiterated in note 5). Given this background, we believe that, if faced with the issue in this case, the Court would conclude that denying the mistake-of-age defense to child pornography producers does not substantially chill protected expression.

Third, the chilling effect on which Gilmour relies -- the reluctance to use young-looking models in sexually explicit adult pornography -- is also qualitatively weak. The First Amendment protection accorded to adult pornography "is not as extensive as that accorded to other speech." X-Citement Video, 513 U.S. at 84, 115 S. Ct. at 474 (dissenting opinion of Justice Scalia, citing the plurality opinion in Young v. American Mini Theatres, Inc., 427 U.S. 50, 61 (1976), and other cases). Although worthy of protection, its status on the relative periphery of the First Amendment is relevant in weighing whether a state statute that legitimately protects children against sexually exploitive conduct must be struck down as *substantially* overbroad. The overbreadth doctrine, "a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct [that] falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct." Broadrick, 413 U.S. at 615.

In this case, we must weigh the statute's chilling effect against its "plainly legitimate sweep."  See Osborne v. Ohio, 495 U.S. 103, 112 (1990); Broadrick, 413 U.S. at 615.  Although issues of this kind are rarely free from doubt, we conclude that Iowa Code § 728.12(1) was constitutionally applied to Gilmour even though he was not afforded a mistake-of-age defense.  Accordingly, the judgment of the district court is affirmed.

MORRIS SHEPPARD ARNOLD, Circuit Judge, dissenting.

In my view, the court has failed to afford certain erotic materials the First Amendment protection that they deserve.  I refer, of course, not to sexually explicit photographs of men and women who are under age, but to sexually explicit photographs of men and women who are not.  Though the court appropriately adverts to the Supreme Court's caution that a statute like the one under consideration here "would raise serious constitutional doubts," it  nevertheless resolves those doubts in favor of the State of Iowa.  In doing so, the court relies mainly on three propositions, none of which, I believe, can properly serve to dispose of the case in the manner that the court suggests.

The court makes the point that a mistake-of-age defense is contrary to the state's interest in protecting minors from the consequences of their own ill-conceived decisions.  In support of this rationale, the court makes the asseveration that "the defense will typically [my emphasis] be proved by evidence that the minor was a willing, perhaps deceitful participant." First of all, a minor's willingness would be completely irrelevant to a mistake-of-age defense.  I am unclear, moreover, where the court could find the data to support the assumption that the minors involved in these kinds of cases are typically deceitful.  A properly crafted

mistake-of-age defense, in any case, would doubtless impose some affirmative duties of inquiry on defendants seeking to rely on it, and it seems likely that it would almost always be appropriate to instruct a jury that a defendant cannot rely on his or her deliberate ignorance when claiming the benefit of such a defense.  How such a mistake-of-age defense would measurably encourage deceitfulness is a mystery, and, in any event, the state's interest in protecting minors from themselves becomes less weighty as their deceitfulness becomes less typical.

The distinction that the court draws between producers of erotic materials and its distributors is without legal significance.  The fact that a producer is in some measure "like" a statutory rapist (because they both deal directly with the young woman or girl in question) makes for an imperfect analogy, because there is no constitutional right to engage in consensual sexual intercourse with anyone (except, presumably, one's spouse), but there is a right to take erotic pictures:  Statutes forbidding fornication are not unconstitutional, but statutes prohibiting the production of nonobscene, sexually explicit material are.  Not providing a mistake-of-age defense to a person who engages in sexual acts with a minor, therefore, does not produce substantial negative neighborhood effects on a constitutional right, enumerated or otherwise; and the First Amendment provides probably the most explicit, expansive, and pervasive protections against an intrusive government that our Bill of Rights contains.  If it is true, moreover, as the court opines, that in "this information age, a prudent photographer ... may readily ... confirm the age of virtually every young-looking model," then a defendant claiming that he or she reasonably mistook a model's age will hardly ever prevail, and the dire consequences that the court predicts would follow if such a defense were allowed evaporate completely in the face of its own argument.

Most importantly, the court makes the extraordinary assertion that the right that the defendant says will be chilled by the Iowa statute is "qualitatively weak." The court purports to find this legal principle in the dissenting opinion of Mr. Justice Scalia in United States v. X-Citement Video, Inc., 513 U.S. 64 (1994). A dissenting opinion is an odd place at best to look for an applicable legal proposition. In any case, the court posits an interpretation of Young v. American Mini Theatres, Inc., 427 U.S. 50, 61 (1976) that the case will not in fact bear. Young does not say that the First Amendment is less solicitous of nonobscene, sexually explicit materials than it is of other kinds of protected speech. What it says is that, in the circumstances of that case, there was nothing to justify "the exceptional approach to constitutional adjudication recognized in cases like Dombrowski v. Pfister, 380 U.S. 479 [1965]." The Court in this passage was speaking to the point of whether the extraordinary remedy of an injunction against further enforcement of a state statute was appropriate because it was substantially overbroad, not whether the type of speech that was chilled was somehow less worthy of First Amendment protection.

This last proposition, far from being endorsed by the Court in Young, as our court maintains, was in fact specifically rejected by it. Language to that effect does indeed appear in Young, 427 U.S. at 70-71, but in a part of the Court's opinion in which Mr. Justice Powell explicitly refused to join and which therefore did not command a majority of the Court. See id. at 73 n.1, where Mr. Justice Powell opines that he does "not think we need reach, nor am I inclined to agree with, the holding in Part III (and supporting discussion) that nonobscene, erotic materials may be treated differently under First Amendment principles from other forms of protected expression." He goes on to say, id., that he does "not consider the conclusions in Part I of the opinion to

-13-

depend on distinctions between protected speech." Our court simply misreads <u>Young</u> and provides no other authority for its conclusion that the right at stake here is "qualitatively weak."

Because I would take seriously the Supreme Court's admonition in <u>X-Citement Video</u>, 513 U.S. at 78, that a statute that is "completely bereft of a scienter requirement as to the age of the performers would raise serious constitutional doubts," and because it is apparent that the Iowa statute will substantially discourage speech that is protected by the First Amendment, I would hold it void. I believe that the statute's burden on free speech rights is substantial because employing minors for sexual purposes is these days the subject of a great deal of public anxiety, an anxiety that stigmatizes those who are merely accused of it in a very severe way. A conviction for a crime like the one charged here, moreover, will almost certainly cause significant hardship by depriving those convicted of their liberty for a considerable period of time and by creating lasting difficulties for them because of laws that require them to register with local authorities following release. These kinds of burdensome disabilities will surely cause many producers of protected erotic matter to forfeit their First Amendment rights, and this is precisely the kind of forfeiture that courts ought to be assiduous to give citizens the means to avoid.

I would hold that the statute is unconstitutional because it does not allow, at a minimum, a defendant to prove that he or she reasonably believed that the person he or she engaged to participate in the depiction of nonobscene sexual activity was not a minor. It seems to me that there is a real question whether the Constitution is satisfied if the defendant must prove such a defense by clear and convincing evidence, as suggested in <u>United States v. U. S. Dist. Court for Cent. Dist. of Cal.</u>, 858 F.2d 534, 543 (9th Cir. 1988). But since the court is not inclined to hold

-14-

that mistake of age has any constitutional relevance at all in this case, I do not feel it necessary to discuss this point, along with some others that a fully adequate consideration of the case would in fact require.

I respectfully dissent for the reasons adumbrated.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.