# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1974

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Larry Darnell Armstrong, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 11, 2008
Filed: February 10, 2009

_____

Before MURPHY, RILEY, and GRUENDER, Circuit Judges.

_____

RILEY, Circuit Judge.

Larry Darnell Armstrong (Armstrong) was charged with being a felon in possession of a firearm and an armed career criminal. The district court[1] denied Armstrong's motion to suppress the firearm under the Fourth Amendment, and Armstrong pled guilty. At sentencing, the district court found Armstrong was an armed career criminal under the Armed Career Criminal Act (ACCA), and Armstrong was sentenced to the ACCA mandatory minimum of 180 months imprisonment.

_____

[1] The Honorable John R. Tunheim, United States District Judge for the District of Minnesota, adopting the report and recommendations of the Honorable Arthur J. Boylan, United States Magistrate Judge for the District of Minnesota.

Armstrong challenges the denial of his motion to suppress, and his sentence as an armed career criminal. We affirm.

## I.    BACKGROUND

On June 29, 2006, a search warrant was issued by the District Court of Blue Earth County, Minnesota, granting police officers the authority to search the residence and vehicle of Armstrong and his girlfriend, Vera Gant (Gant). The police officers had probable cause to believe Armstrong and Gant used a stolen credit card to make several purchases, including the purchase of wheel rims on their vehicle. The warrant authorized the police officers to look for evidence of the fraudulent purchases made by Armstrong and Gant.

On the same day the warrant was issued, Mankato, Minnesota, police officers executed the warrant. Officer William Reinbold (Officer Reinbold), a member of the Minnesota Valley Drug Task Force, assisted in the execution of the warrant. Officer Reinbold entered the residence and searched the bedroom. Upon entering the bedroom, Officer Reinbold noticed a small plastic container which resembled a hotel ice bucket. Officer Reinbold searched the container looking for stolen credit cards and receipts. In the bucket, Officer Reinbold found a small electronic digital scale and a razor blade with white residue. Officer Reinbold field tested the white residue, and the test revealed the residue contained cocaine. Officer Reinbold told his partner about the field test results, and his partner and another officer immediately arrested Armstrong and Gant for possession of narcotics. During the same search, other officers found cocaine residue in a small jeweler-sized plastic bag in the center console of Armstrong's vehicle, and also found approximately ten unused jeweler-sized bags in the residence's kitchen closet.

After Officer Reinbold finished searching the container, he proceeded to search the bedroom closet about three to five feet from the container. Officer Reinbold moved clothes on the floor of the closet and uncovered a small black case. Officer Reinbold

opened the unlocked end of the case to look for credit cards and receipts, and noticed a Bersa Thunder .380 handgun with ammunition in the case. Officer Reinbold seized the handgun and gave it to another officer to compare the serial number with serial numbers of stolen firearms. The serial number check revealed the handgun was stolen, and a subsequent background check of Armstrong revealed Armstrong was a convicted felon.

Armstrong was indicted on one count of being a felon in possession of a firearm under 18 U.S.C. § 922(g). The indictment also charged Armstrong with being an armed career criminal under 18 U.S.C. § 924(e). Armstrong moved the district court to suppress the handgun because it was obtained in violation of the Fourth Amendment. The district court referred the motion to a magistrate, and on February 13, 2007, the magistrate conducted a hearing on the motion to suppress. During the hearing, the government called Officer Reinbold. Officer Reinbold testified about his participation in the search, and stated his training and experience led him to believe Armstrong and Gant were engaged in narcotics dealing when he found the electronic digital scale and razor blade with cocaine residue. Officer Reinbold also testified the handgun in the vicinity of the narcotics on the scale and razor blade evidenced narcotics dealing. The magistrate recommended the district court deny Armstrong's motion to suppress the handgun because the handgun's incriminating character was immediately apparent under the plain view doctrine after the scale and razor blade with cocaine residue provided probable cause to suspect drug trafficking.

The district court reviewed the magistrate's recommendation and remanded the motion for the magistrate to elicit expert testimony on whether the small electronic digital scale would be a tool of drug trafficking, and whether the scale in combination with the other items found at the residence supported a conclusion of probable cause to suspect drug trafficking. On remand, the magistrate conducted a hearing at which the government called Officer Keith Mortensen (Officer Mortensen) and Officer John Boulger (Officer Boulger). Officer Mortensen testified he had been an officer for over

eleven years and participated in approximately thirty drug related search warrants. Officer Mortensen explained the jeweler-sized plastic bags found in Armstrong's kitchen and vehicle were sometimes used for controlled substances, and the electronic digital scale would be a useful tool in drug distribution. Officer Boulger, a stipulated expert in the drug trade, reported he had seen the type of scale found in the residence used for drug trafficking "on hundreds of occasions," and opined the electronic digital scale, razor blade, and plastic bags found in Armstrong's kitchen and in the car's center console would lead him to believe drug trafficking was occurring.

Based upon the testimony of Officer Mortensen and Officer Boulger, the magistrate issued a supplemental report to the district court recommending Armstrong's motion to suppress be denied, because the small electronic digital scale and cocaine residue were sufficient evidence to establish probable cause that drug trafficking was occurring. On July 10, 2007, the district court adopted the magistrate's supplemental recommendation, and denied Armstrong's motion to suppress the handgun. The district court found the testimony of Officer Boulger and Officer Mortensen established a reasonable officer would have probable cause to believe drug trafficking was occurring based on the small electronic digital scale, razor blade and the cocaine residue, together with the absence of any evidence indicating personal cocaine use.

After the district court denied Armstrong's motion to suppress, Armstrong entered a conditional plea of guilty, reserving the right to appeal the district court's ruling on his motion to suppress. At sentencing, the government argued Armstrong should be classified as an armed career criminal subject to the mandatory minimum sentence of 180 months imprisonment under 18 U.S.C. § 924(e)(1). The government claimed Armstrong's presentence investigation report (PSR) contained five prior felony convictions in Minnesota state court which qualified as "violent felon[ies]" under § 924(e)(2)(B). These convictions included a 1990 theft of a motor vehicle, a 1990 residence burglary, a 1992 simple robbery involving the mugging of a woman

and stealing her purse, a 1997 theft of a motor vehicle, and a 2004 third degree attempted burglary of a store.

Armstrong objected to the use of his auto thefts and attempted burglary convictions as predicate offenses under the ACCA. Armstrong claimed the auto thefts were not violent felonies, and the attempted burglary conviction should not be used because Armstrong had not sufficiently waived his Sixth Amendment right to counsel during the state court plea and sentencing proceedings. In response to Armstrong's arguments, the district court found Armstrong's auto theft convictions were violent felonies and determined Armstrong was an armed career criminal based upon the auto thefts, burglary, and simple robbery convictions. In its ruling, the district court did not include Armstrong's attempted burglary conviction in the ACCA determination, because the district court found Armstrong was not represented by counsel and had not sufficiently waived his right to counsel for this offense. Armstrong was sentenced to the ACCA mandatory minimum 180 months imprisonment. This appeal follows.

## II.   DISCUSSION
### A.   Motion to Suppress the Handgun

Armstrong first appeals the district court's denial of his motion to suppress the handgun. Armstrong argues the handgun should have been suppressed because the handgun was not named in the warrant and does not fall within the plain view exception to the Fourth Amendment. Armstrong contends the incriminating nature of the handgun was not immediately apparent to fit within the plain view exception, because the small electronic digital scale and razor blade with cocaine residue did not establish probable cause Armstrong was trafficking drugs. We review "the district court's factual determinations in support of its denial of a motion to suppress for clear error and its legal conclusions de novo." United States v. Hogan, 539 F.3d 916, 921 (8th Cir. 2008) (quoting United States v. Harper, 466 F.3d 634, 643 (8th Cir. 2006)).

Under the plain view doctrine, evidence may be seized without a warrant if the following three conditions are met: "(1) 'the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed,' (2) the object's incriminating character is immediately apparent, and (3) the officer has 'a lawful right of access to the object itself.'" United States v. Hughes, 940 F.2d 1125, 1126-27 (8th Cir. 1991) (quoting Horton v. California, 496 U.S. 128, 136-37 (1990)).

The only dispute in this appeal is whether the handgun's incriminating character was immediately apparent. Evidence is immediately apparent "if there is 'probable cause to associate the property [seized] with criminal activity.'" United States v. Newton, 788 F.2d 1392, 1395 (8th Cir. 1986) (quoting Texas v. Brown, 460 U.S. 730, 741-42 (1983)). "In determining whether this requirement is met, we may consider the collective knowledge of the officers executing the searches." Id. (citations omitted).

The circumstances surrounding the seizure of the handgun persuade us there was probable cause to believe drug trafficking was occurring. Officer Reinbold testified the small electronic digital scale and razor blade with cocaine residue led him to believe drug trafficking was occurring. Officer Reinbold's belief was strengthened when he found the gun and ammunition three to five feet from the scale and razor blade. Officer Mortensen and Officer Boulger corroborated Officer Reinbold's conclusion. Officer Mortensen, using the "collective knowledge of the officers executing the searches," id., testified the jeweler-sized bags and the electronic digital scale were indicative of drug distribution. Officer Boulger affirmed the scale was a tool of the drug trade, and the scale, razor blade, and jeweler-sized bags collectively evidenced drug trafficking. Based on this record, we conclude a reasonable officer would have probable cause to believe Armstrong was engaging in drug trafficking. Because it is unlawful to use, carry, or posses a firearm in furtherance of a drug trafficking crime, see 18 U.S.C. § 924(c)(1)(A), the handgun's incriminating nature

was immediately apparent and admissible under the plain view doctrine.[2] The district court did not err in denying Armstrong's motion to suppress.

## B. Application of the ACCA

Armstrong also challenges the district court's determination he is an armed career criminal subject to a mandatory minimum of 180 months imprisonment under 18 U.S.C. § 924(e)(1). Armstrong claims his auto theft crimes are not violent felonies under the ACCA, and without his auto theft convictions, he does not have three violent felony convictions necessary to be classified as an armed career criminal. We review de novo whether a prior offense is a violent felony under the ACCA. United States v. Vincent, 519 F.3d 732, 733 (8th Cir. 2008).

Under 18 U.S.C. § 924(e)(1), a person convicted of being a felon in possession of a firearm is subject to a mandatory minimum fifteen year sentence if the person has three previous convictions for a violent felony or serious drug offense. A crime is a violent felony if it is punishable by more than one year imprisonment, and "has as an element the use, attempted use, or threatened use of physical force against the person of another" or "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B).

The district court determined Armstrong's Minnesota auto theft convictions were violent felonies under the ACCA. Subsequently, the Supreme Court held driving while intoxicated was not a violent felony for the purposes of the ACCA. See Begay v. United States, __ U.S. __, 128 S. Ct. 1581, 1583 (2008). After Begay, this court

---

[2]The government argues, in the alternative, the incriminating nature of the handgun was immediately apparent because it is unlawful to possess a firearm while being a drug user. See 18 U.S.C. § 922(g)(3). Because we find there was sufficient evidence to support probable cause of drug trafficking, we recognize, but choose not to discuss, the government's alternative argument.

held auto theft is not a violent felony under Minn. Stat. § 609.52.  United States v. Miller, No. 06-1407, 2008 WL 5397754, at *1 (8th Cir. Dec. 30, 2008) (per curium); see also United States v. Aleman, 548 F.3d 1158, 1168 (8th Cir. 2008) (holding auto theft under Minnesota law is not a crime of violence under the U.S.S.G.); United States v. Williams, 537 F.3d 969, 973-75 (8th Cir. 2008) (another panel of this court using Begay to overrule circuit precedent and holding an inquiry regarding a "crime of violence" under the U.S.S.G. is the same as a violent felony under the ACCA, and auto theft by deception or without consent under Missouri law is not a violent felony under the ACCA).  Based on Miller, the district court erred in using Armstrong's auto thefts as predicate offenses under the ACCA.

Although the district court committed error, our review is not complete. Because Begay altered the interpretation of the ACCA's violent felony definition while Armstrong's appeal was pending, we review Armstrong's classification as an armed career criminal for plain error.  See United States v. Heikes, 525 F.3d 662, 664 (8th Cir. 2008) (citing United States v. Pirani, 406 F.3d 543, 549 (8th Cir. 2005) (en banc)) ("When the Supreme Court changes the law while a defendant's case is pending on appeal, the plain error principle applies.").  Under plain error review, if Armstrong "has at least three other qualifying ACCA predicate offenses," he is not entitled to relief even though the district court based its ACCA sentence on the auto thefts.  United States v. Comstock, 531 F.3d 667, 679 (8th Cir. 2008).

There is no dispute Armstrong's convictions for burglary and simple robbery are qualifying violent felonies under the ACCA.  The parties disagree whether Armstrong's attempted burglary serves as a third ACCA predicate offense.  The government claims the district court erred in excluding the attempted burglary as a countable offense because the entire record demonstrates Armstrong made a sufficient waiver of his right to counsel for this conviction.  The government concludes Armstrong's convictions for burglary, simple robbery, and attempted burglary satisfy § 924(e).

Armstrong contends the district court correctly excluded his attempted burglary conviction from the ACCA consideration because the Minnesota state court failed to obtain an adequate waiver of Armstrong's right to counsel. Armstrong asserts his waiver was inadequate because (1) the Minnesota state court failed to give a detailed colloquy to Armstrong advising him of the dangers of self representation, and (2) the entire record shows Armstrong did not understand he was waiving his right to counsel, because Armstrong has a low IQ and made the "flippant response," "Why not," during the sentencing hearing. Armstrong concludes the exclusion of the attempted burglary conviction, along with the auto theft convictions, renders his criminal history deficient for armed career criminal status.

We review de novo whether Armstrong validly waived his right to counsel, thereby making his attempted burglary conviction a predicate offense for the ACCA. See Vincent, 519 F.3d at 733 ("This court reviews de novo the finding that a defendant's prior conviction constitutes a violent felony."); United States v. Crawford, 487 F.3d 1101, 1105 (8th Cir. 2007) ("This Court reviews de novo a district court's decision to allow a defendant to proceed pro se." (citing United States v. Mahasin, 442 F.3d 687, 691 (8th Cir. 2006)). As a general rule, prior convictions used for sentencing under the ACCA cannot be collaterally attacked. See United States v. Levering, 431 F.3d 289, 294 (8th Cir. 2005) (quoting Moore v. United States, 178 F.3d 994, 997 (8th Cir. 1999)). However, "[a] narrow exception to this rule applies if the prior conviction was obtained in violation of the defendant's right to counsel." Id. (citing Moore, 178 F.3d at 997).

The Sixth Amendment provides a criminal defendant the right to counsel and the corresponding right to waive the right to counsel and proceed pro se. See United States v. Patterson, 140 F.3d 767, 774 (8th Cir. 1998) (citing Faretta v. California, 422 U.S. 806, 807 (1975)). If the defendant waives the right to counsel, the waiver must be voluntary, intelligent, and knowing. See Crawford, 487 F.3d at 1105 (quoting Meyer v. Sargent, 854 F.2d 1110, 1114 (8th Cir. 1988)). This standard is met if the trial court

specifically informed the defendant of the dangers and disadvantages of self-representation, or if the entire record evidences the defendant knew and understood the disadvantages. See id. at 1105-06. When analyzing the entire record for a valid waiver, we look to "the background, experience, and conduct of the accused . . . [including] the defendant's past contacts with the criminal justice system and his performance at the proceeding at which he represented himself." Ferguson v. Bruton, 217 F.3d 983, 985 (8th Cir. 2000) (per curium) (quoted source and internal marks omitted).

Although the state court did not engage in a specific colloquy with Armstrong regarding the dangers and disadvantages of proceeding unrepresented on the attempted burglary charge, a review of the entire record convinces us Armstrong made a voluntary, intelligent, and knowing waiver of his right to counsel for this conviction. When Armstrong waived his right to counsel for the attempted burglary charge, Armstrong had extensive prior contact with the criminal justice system. Up to that date, Armstrong had six juvenile adjudications followed by twenty adult convictions spanning approximately twenty-two years, including at least two burglaries. Armstrong is a lengthy veteran of the criminal justice system. Armstrong also had previous experience representing himself. Before his 2004 waiver on the attempted burglary charge, Armstrong had proceeded pro se three times on driving after revocation charges.

Armstrong's conduct at the plea and sentencing hearing on the attempted burglary charge further demonstrates his valid waiver of his right to counsel. At the beginning of the hearing, the district court asked Armstrong a series of questions regarding his choice to be unrepresented. During these questions, Armstrong confirmed (1) he had discharged his counsel, (2) he did not want counsel at the proceeding, (3) he believed he had no reason for counsel, and (4) he understood counsel would not be present "to advise" him and "represent [his] interests." Armstrong ratified these answers later in the hearing, confirming he was ready to

proceed without his attorney. The district court also asked Armstrong three times throughout the hearing if he understood the proceedings and what was occurring. Each time, Armstrong answered he understood.

Finally, Armstrong's sophisticated and intelligent performance at the state plea and sentencing hearing evidence Armstrong's valid waiver. During the hearing, Armstrong acknowledged one of his counts was being dismissed and confirmed he initiated and negotiated the plea agreement. Armstrong also ensured his sentence on the attempted burglary charge would run concurrent with a prior sentence he was serving, and ensured he would get time served credit for other jail time he had served on a probation violation. In addition, Armstrong successfully petitioned the court for production of notes and discovery on a related receiving stolen goods charge. These facts demonstrate Armstrong had a significant background in, and experience with, the criminal justice system, and made an intelligent, knowing, and voluntary waiver of his right to counsel. Under our supervisory review of federal courts, our review could be stricter, but our review of this state proceeding is limited to a constitutional analysis alone. See Smith v. Phillips, 455 U.S. 209, 221 (1982) ("Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." (citations omitted)). Thus, Armstrong's criminal history, along with his conduct and performance at his plea and sentencing hearing, persuade us his waiver was constitutional.

Because Armstrong constitutionally waived his right to counsel on the attempted burglary conviction, the conviction is counted in Armstrong's armed career criminal determination. See United States v. Solomon, 998 F.2d 587, 590 (8th Cir. 1993) (holding attempted second degree burglary under Minnesota law is a violent felony under § 924(e)). Armstrong's burglary, simple robbery, and attempted burglary convictions are three qualifying offenses under the ACCA, and the district court's 180-month sentence was not erroneous.

## III.  CONCLUSION

The district court's judgment and sentence are affirmed.

_____