# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2579

_____

United States of America,          *
                                      *

          Appellee,        *

                                      * Appeal from the United States
     v.                     * District Court for the
                                      * Eastern District of Missouri.
                                      *

Devin C. Wilson,                *

                                      *

          Appellant.       *

_____

Submitted: January 15, 2009
Filed: May 14, 2009

_____

Before LOKEN, Chief Judge, WOLLMAN and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Devin C. Wilson was convicted on one count of transporting a minor across state lines for prostitution in violation of 18 U.S.C. § 2423(a), two counts of producing child pornography in violation of 18 U.S.C. § 2251(a), and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). The district court[1] sentenced him to a total term of 440 months imprisonment. He appeals on various grounds. First, he challenges the denial of his motion to suppress arguing

_____

[1]The Honorable Henry Edward Autrey, United States District Judge for the Eastern District of Missouri.

that evidence was improperly seized. Second, he contends that the district court abused its discretion by not instructing the jury that (1) the government was required to prove scienter as to the victim's age and (2) he was entitled to present a reasonable-mistake-of-age defense. In addition, he argues that the indictment was procured through perjured testimony, that problems during voir dire should have resulted in a mistrial, and that the evidence was insufficient to support his conviction. We affirm.

I.

On the evening of September 2, 2006, members of the Caruthersville Police Department received a 911 emergency dispatch to 801 West Eighth Street in Caruthersville, Missouri to investigate a possible kidnapping. When the officers arrived at the residence, a 16-year old female ("the Victim") was standing outside and got into the officers' police car. She told the officers that she had been kidnapped in Oklahoma City, Oklahoma. While the Victim was in the police car, Wilson drove up in his vehicle and the Victim told the officers that he was the person who had kidnapped her. She said that Wilson had forced her to work as a prostitute and exotic dancer and that he had ecstasy pills and crack cocaine in the house. She also said that her bags and clothing were still in the house. Based on this information, the officers arrested Wilson.

One of the arresting officers, Assistant Chief Tony Jones ("Officer Jones"), then went to the prosecuting attorney's office to prepare an application and affidavit for a warrant to search Wilson's residence and vehicle. Officer Jones also directed Officer Tina Cook ("Officer Cook") to interview the Victim. During this interview, the Victim told Officer Cook that Wilson had videotaped her engaging in various sexual acts using a video camera and his cellular phone. The Victim told Officer Cook that Wilson kept the video camera on the floor of the front room of his residence. She also told Officer Cook that Wilson kept drugs and a handgun in a closet on the first floor.

While Officer Cook was interviewing the Victim, Officer Jones was at the prosecuting attorney's office working on the warrant application. After the application and affidavit were typed, but before they were sworn to by Officer Jones, Officer Cook called prosecuting attorney Mike Hazel and informed him of what the Victim had said during her interview. Hazel added this information in handwriting to the warrant application.

Based on this additional information, Officer Jones obtained a warrant to search Wilson's residence and vehicle for controlled substances and the Victim's personal belongings. Immediately prior to executing the warrant, Officer Cook briefed the other officers about her interview with the Victim. During the search, Officer Cook found a video camera on the floor of Wilson's front room, precisely where the Victim said it would be. Officer Cook removed the video tape and left the camera at Wilson's residence. Another officer seized a handgun found in a downstairs closet. While searching Wilson's Cadillac, Officer Jones found a cellular phone with a built-in camera. Although there is some ambiguity in the record about what happened next, Officer Jones eventually opened the phone and observed pornographic photographs stored on it.

At this point, the facts take an odd turn. Officer Jones had fathered two children with a woman named Jennifer Selvege. At the time of the search, Selvege was romantically involved with Wilson, apparently to Officer Jones's disapproval. Officer Jones had previously asked Selvege not to allow their children to be around Wilson. After finding the phone in Wilson's vehicle, Officer Jones called Selvege to tell her about the photographs and reiterate his request that she not permit their children to be around Wilson. At the suppression hearing, Selvege testified that, when she was at the Caruthersville police station on a date sometime after the execution of the search warrant, Officer Jones showed her the images stored on the phone. Officer Jones denied that he ever showed Selvege the phone.

Several months after the execution of the search warrant, Federal Bureau of Investigation Agent Herbert Stapleton ("Agent Stapleton") went to Wilson's residence to execute a federal arrest warrant for the crime of being a felon in possession of a firearm. Agent Stapleton was aware of the Victim's child pornography allegations against Wilson. While executing the arrest, he recognized the video camera from photographs he had seen of the prior search. Because of his belief that the camera might be relevant to the child pornography accusations, Agent Stapleton seized the video camera. Federal agents later sought and obtained a search warrant to search the data stored on the cellular phone and videotape.

Wilson was subsequently indicted on several charges: one count of transporting a minor across state lines for criminal sexual activity in violation of 18 U.S.C. § 2423(a), two counts of producing child pornography in violation of 18 U.S.C. § 2251(a), one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), and two counts of possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Wilson did not challenge the indictment before the district court. He now alleges for the first time that his indictment was procured through the Victim's perjured testimony.

Wilson filed a motion to suppress the videotape, video camera, cellular phone, and firearm on the theory that the seizure of these items was unlawful because they were not listed with particularity in the search warrant. The district court denied the motion to suppress, explaining that all of these items were in "plain view" and therefore a warrant was not required for their seizure. Wilson now contends that the criminal character of these items was not "immediately apparent" as required by the plain view doctrine. See, e.g., United States v. Khabeer, 410 F.3d 477, 482 (8th Cir. 2005); United States v. Weinbender, 109 F.3d 1327, 1330 (8th Cir. 1997). Wilson does not appeal the seizure of the firearm.

During the pre-trial conference, the government moved to dismiss the possession of child pornography charges. As the government acknowledges, this was

-4-

done to relieve the prosecution of the need to prove that Wilson knew that the Victim was a minor.[2] The district court granted the motion and dismissed the possession of child pornography charges. The government also sought an order prohibiting Wilson from presenting to the jury any evidence suggesting that he mistakenly believed the Victim to be 18 or older. The district court granted this request as well and approved the government's proposed jury instruction, which omitted any reference to scienter or a reasonable-mistake-of-age defense.

During voir dire, Wilson moved for a mistrial based on his allegation that the jury pool was biased against him. One of the prospective jurors had related a story about her daughter who had been kidnapped and forced into prostitution. Wilson claims that several jurors were crying in response to this story, and that this display of emotion compromised the jury's objectivity. The district court denied the request for a mistrial. Finally, at the close of the government's evidence, Wilson requested a judgment of acquittal arguing that the evidence was legally insufficient to support a conviction. The district court denied his request.

## II.

Wilson seeks suppression of the videotape, camera, and cellular phone on the grounds that they were not lawfully seized under the "plain view" exception to the warrant requirement. "The plain view doctrine allows a police officer to seize evidence without a warrant when (1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, (2) the object's incriminating character is immediately apparent, and (3) the officer has a

---

[2]Scienter is an element of the crime of possessing, but not producing, child pornography. Compare 18 U.S.C. § 2252A(a)(5)(B) (possession), with 18 U.S.C. § 2251(a) (production), and United States v. X-Citement Video, Inc., 513 U.S. 64, 76 n.5 (1994) (noting that "producers may be convicted under § 2251(a) without proof they had knowledge of age").

lawful right of access to the object itself." United States v. Abumayyaleh, 530 F.3d 641, 648-49 (8th Cir. 2008) (quotation omitted); see also Horton v. California, 496 U.S. 128, 136-37 (1990). "We review the district court's findings of fact for clear error and review Fourth Amendment seizures de novo." Abumayyaleh, 530 F.3d at 648 (citation omitted).

Wilson limits his appeal to whether the incriminating character of the seized items was immediately apparent. "Evidence is immediately apparent if there is probable cause to associate the property [seized] with criminal activity." United States v. Armstrong, 554 F.3d 1159, 1163 (8th Cir. 2009) (quotation omitted). "Probable cause demands not that an officer be sure or certain but only that the facts available to a reasonably cautious man would warrant a belief that certain items may be contraband or stolen property or useful as evidence of a crime." United States v. Weinbender, 109 F.3d 1327, 1330 (8th Cir. 1997) (quotation omitted). "In determining whether this requirement is met, we may consider the collective knowledge of the officers executing the searches." Armstrong, 554 F.3d at 1163 (quotation omitted).

Relying solely on Arizona v. Hicks, 480 U.S. 321 (1987), Wilson argues that the incriminating evidence contained on the video tape, camera, and phone was not immediately apparent because police had to manipulate those items before viewing the material stored therein. In Arizona v. Hicks, the Supreme Court held that the plain view exception did not apply where officers, lacking probable cause to associate stereo equipment with criminal activity, moved the equipment to read and record its serial numbers. Id. at 323. Wilson's reliance on Arizona v. Hicks is misplaced because the officers had probable cause to believe that the items were connected to criminal activity without viewing their contents.

The Victim informed Officer Cook that Wilson had used his cellular phone and a video camera to record her engaging in underage sexual activity. When Officer Cook discovered the video camera lying in the same location the Victim had

described, she removed the tape. Furthermore, Officer Jones knew the details of Officer Cook's interview with the Victim before he seized the cellular phone. Finally, Agent Stapleton was familiar with the Victim's allegations and recognized the video camera from pictures of the earlier search when he seized the camera during Wilson's subsequent arrest on federal gun charges. Due to this information, probable cause existed, and the incriminating nature of each of the items was immediately apparent. Thus, unlike the stereo equipment in Arizona v. Hicks, the tape, video camera, and phone fall under the plain view exception, and the seizure of these items was proper.

In addition to his plain view challenge, Wilson also argues that the cellular phone was inadmissible based on gaps in its chain of custody. During the pre-trial suppression hearing, Jennifer Selvege testified that Officer Jones had shown her the images on the phone at a date sometime after the initial search and seizure, an allegation that Officer Jones denied. The officer in charge of logging and storing evidence at the Caruthersville Police Department, Frank Cervantes, testified at trial that he did not receive the cellular phone into storage until September 11, 2006, nine days after the search on September 2. Another officer, Sergeant Michael Coleman, testified that he had stored the phone in his desk drawer during the nine day interim.

"We review a district court's decision to admit evidence over an objection for an abuse of discretion." United States v. Cannon, 88 F.3d 1495, 1503 (8th Cir. 1996), abrogated on other grounds by Watson v. United States, 128 S. Ct. 579 (2007). "[I]n order for evidence to be admissible, a chain of custody must exist that shows a reasonable probability that the evidence has not been changed or altered." United States v. Lothridge, 332 F.3d 502, 504 (8th Cir. 2003). "In making this determination, absent a showing of bad faith, ill will, or proof of tampering, the court operates under a presumption of integrity for the physical evidence." Cannon, 88 F.3d at 1503. The location and custody of the cellular phone were adequately identified and Wilson has failed to aver any facts showing change or alteration of the images on the cellular phone. Accordingly, he has failed to rebut the presumption of integrity. As a result, the district court did not abuse its discretion in admitting the cellular phone.

III.

Wilson challenges the jury instructions on various grounds. First, he argues that his due process rights were violated because the jury was not instructed that the government must prove he knew the Victim's age. Second, he contends that the First Amendment requires that he be permitted to argue to the jury that he was reasonably mistaken as to the Victim's age. District courts have "broad discretion in formulating jury instructions." United States v. Farish, 535 F.3d 815, 821 (8th Cir. 2008) (quotation omitted).

With regard to his first argument, Wilson acknowledges that section 2251(a) contains no scienter requirement.[3] See, e.g., X-Citement Video, 513 U.S. at 76 n.5 ("producers may be convicted under § 2251(a) without proof they had knowledge of age"); United States v. Deverso, 518 F.3d 1250, 1257 (11th Cir. 2008). His sole argument for requiring the government to prove knowledge of the Victim's age is the fact that the government in a previous production-of-child-pornography case, United States v. Kent, 531 F.3d 642 (8th Cir. 2008), did not object to a jury instruction requiring proof of knowledge as an element of the offense. Wilson claims that the failure to object to the scienter requirement in the Kent case makes it inequitable to convict him (and apparently any other future defendant) without proving knowledge of the Victim's age. He cites no authority for this claim, and we can find none. Kent has no relation to the current case and the district court did not abuse its discretion

_____

[3]Wilson does not raise this argument with respect to his conviction for "knowingly transport[ing] an individual who has not attained the age of 18 years . . . with intent that the individual engage in prostitution" under 18 U.S.C. § 2423(a). We note, without deciding, that other courts of appeals have held that section 2423(a) does not require that the defendant know the victim's underage status. See United States v. Jones, 471 F.3d 535, 538 (4th Cir. 2006); United States v. Griffith, 284 F.3d 338, 351 (2d Cir. 2002); United States v. Taylor, 239 F.3d 994, 997 (9th Cir. 2001); United States v. Scisum, 32 F.3d 1479, 1485 (10th Cir. 1994); United States v. Hamilton, 456 F.2d 171, 173 (3d. Cir. 1972) (per curiam).

when it denied Wilson's request to include a scienter requirement in the jury instructions.

In a somewhat different version of this challenge, Wilson also alleges that his due process rights were violated because the district court refused to submit to the jury Eighth Circuit Model Jury Instruction number 6.18.2422B, which instructs that the defendant must believe the victim to be underage for charges of enticing a minor to engage in sexual activity under 18 U.S.C. § 2422(b). There are two insurmountable problems with this claim. First, model jury instructions are just that, models. They are not mandatory, United States v. Evans, 272 F.3d 1069, 1081 n.3 (8th Cir. 2001), and their formulation is largely entrusted to the discretion of the district court, Farish, 535 F.3d at 821. Second, the instruction requested by Wilson does not apply to any of the charges for which he was indicted. Model Instruction 6.18.2422B is an instruction for enticing a minor to engage in unlawful sexual activity in violation of 18 U.S.C. § 2422(b). Wilson was not charged under section 2422(b) and, therefore, it was neither a denial of due process nor an abuse of discretion to deny his requested instruction.

Wilson's more colorable claim is that not allowing a reasonable-mistake-of-age defense to charges under section 2251(a) makes the statute overbroad, thereby chilling protected speech in violation of the First Amendment. "[S]ection 2251(a) . . . does not, on its face, make reasonable mistake of age an affirmative defense." United States v. United States Dist. Ct., 858 F.2d 534, 538 (9th Cir. 1988). Nonetheless, Wilson urges that, absent such a defense, producers of pornography will be deterred from creating lawful materials that depict youthful-looking adult actors.

Although the First Amendment protects non-obscene adult pornography, sexually explicit materials involving persons under the age of 18 enjoy no constitutional protection. See New York v. Ferber, 458 U.S. 747, 764 (1982). Given the complete absence of free speech rights once one crosses this threshold, Wilson argues that strict liability under section 2251(a) will inhibit producers of adult

pornography from engaging in protected speech. This argument operates in tandem with the common law's background presumption that the *mens rea* requirement typically cannot be overcome merely by an omission of that element in the text of a criminal statute. See United States v. United States Gypsum Co., 438 U.S. 422, 438 (1978) ("[F]ar more than the simple omission of the appropriate phrase from the statutory definition is necessary to justify dispensing with an intent requirement."); Morissette v. United States, 342 U.S. 246, 263 (1952) (reading knowledge requirement into federal embezzlement statute where plain language of statute did not contain any scienter element). Finally, the Supreme Court has held that the First Amendment requires that knowledge of the victim's age be proven to support a conviction under 18 U.S.C. § 2252, which prohibits the distribution of child pornography. X-Citement Video, 513 U.S. at 78. Wilson argues that, by implication, X-Citement Video also requires that alleged producers be permitted to defend on the grounds that they were reasonably mistaken as to the victim's age.

However, X-Citement Video distinguished between producers and those who distribute or possess child pornography. Id. at 76 n.5. This distinction belies Wilson's attempted analogy between the judicially created scienter requirement in section 2252 and his requested reasonable-mistake-of-age defense to charges under section 2251. Producers of child pornography, unlike distributors and downstream consumers, are more akin to statutory rapists who are not entitled to any *mens rea* safeguards. See X-Citement Video, 513 U.S. at 72 n.2 (comparing producers charged under section 2251 with statutory rapists and distinguishing both from distributors and recipients of child pornography charged under section 2252); Morissette, 342 U.S. at 251 n.8 (noting that the common-law presumption in favor of *mens rea* did not apply to "sex offenses, such as rape, in which the victim's actual age was determinative despite defendant's reasonable belief that the girl had reached age of consent"). This exception to the presumption in favor of *mens rea* is a function of the fact that producers are in a better position to verify the age of the actors they employ. X-Citement Video at 76 n.5 ("The difference in congressional intent with respect to § 2251 versus § 2252 reflects the reality that producers are more conveniently able to

-10-

ascertain the age of performers. It thus makes sense to impose the risk of error on producers."). Thus, because producers may more confidently determine the age of their actors, their speech is less apt to be inhibited by the fear of mistake or deception.

We have not had occasion to address this issue in the context of section 2251(a). Other circuits have split as to whether the First Amendment requires reading a reasonable-mistake-of-age defense into the statute. Compare United States Dist. Ct., 858 F.2d at 541 (holding that "imposition of major criminal sanctions on these defendants without allowing them to interpose a reasonable mistake of age defense would choke off protected speech"), with United States v. Deverso, 518 F.3d 1250, 1258 (11th Cir. 2008) (holding that "the Constitution does not mandate a mistake of age defense under § 2251"), and United States v. Crow, 164 F.3d 229, 236 (5th Cir. 1999) (holding that nothing requires reading scienter requirement into section 2251(a)). We have, however, had occasion to rule on this issue in the context of a virtually identical Iowa statute. See Gilmour v. Rogerson, 117 F.3d 368 (8th Cir. 1997). Like its federal counterpart, Iowa Code § 728.12(1) criminalizes the production of child pornography.[4] Also like section 2251(a), it neither contains a *mens rea* requirement nor does it permit an affirmative mistake-of-age defense.

In Gilmour, the defendant sought habeas review of his state court conviction for producing child pornography in violation of section 728.12(1) on the grounds that the First Amendment required that he be permitted to argue to the jury that he was

---

[4]Section 728.12(1) reads

> It shall be unlawful to employ, use, persuade, induce, entice, coerce, solicit, knowingly permit, or otherwise cause or attempt to cause a minor to engage in a prohibited sexual act or in the simulation of a prohibited sexual act. A person must know, or have reason to know, or intend that the act or simulated act may be photographed, filmed, or otherwise preserved . . . in any other type of storage system.

reasonably mistaken as to the victim's age. We rejected this argument. We explained that, as the Supreme Court noted in X-Citement Video, the background assumption of *mens rea* is inappropriate for some strict liability sex crimes, such as statutory rape. Gilmour, 117 F.3d at 372 (discussing X-Citement Video, 513 U.S. at 72 n.2). Thus, the First Amendment calculus is different depending on the proximity of the defendant to the victim. Id. ("Unlike most distributors, the sexually exploitive producer deals directly with the child victim, like the statutory rapist who has traditionally been denied a mistake-of-age defense."); see also X-Citement Video, 513 U.S. at 72 n.2 ("The opportunity for reasonable mistake as to age increases significantly once the victim is reduced to a visual depiction, unavailable for questioning by the distributor or receiver."). We concluded that this fact, combined with the very strong interest the state has in protecting children from sexual exploitation, belied any claim that the First Amendment required a reasonable-mistake-of-age defense. 117 F.3d at 372-73.

As in Gilmour, "we must weigh the statute's chilling effect against its 'plainly legitimate sweep.'" 117 F.3d at 373 (quoting Osborne v. Ohio, 495 U.S. 103, 112 (1990)). Given the functional identity of section 2251(a) and Iowa Code § 728.12(1), the First Amendment calculus is likewise identical between the two. The analogy of producers to statutory rapists serves to overcome the background presumptions of *mens rea* and scienter. Furthermore, given the opportunity producers have to verify the age of the actors they employ, we do not think the risk of error or fraud in determining someone's age is significant enough to chill "a substantial amount of protected speech . . . ." Ashcroft v. Free Speech Coal., 535 U.S. 234, 255 (2002); see also Osborne v. Ohio, 495 U.S. 103, 112 (1990) ("[T]he scope of the statute does not render it unconstitutional unless its overbreadth is not only real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." (quotation omitted)). These two factors, combined with the strong interest the state has in protecting children from sexual exploitation, fatally undermine Wilson's First Amendment claim. Thus, we hold that the First Amendment does not require a reasonable-mistake-of-age defense to charges of producing child pornography in violation of section 2251(a).

IV.

Wilson alleges that the district court abused its discretion in refusing to declare a mistrial based on his claim that four members of the jury pool were crying during voir dire in response to another prospective juror's emotional story about her daughter who had been a victim of forced prostitution. The juror who related the story, as well as the four who Wilson claims were crying, were struck from the jury panel. All remaining jurors stated that they were able to remain impartial and objective.

"The Sixth Amendment right to jury trial 'guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors.'" United States v. Lussier, 423 F.3d 838, 841 (8th Cir. 2005) (quoting Irvin v. Dowd, 366 U.S. 717, 722 (1961)). We review a denial of a motion for mistrial for abuse of discretion. United States v. Davis, 534 F.3d 903, 914 (8th Cir. 2008), cert. denied 129 S. Ct. 1388 (2009). "We defer to the discretion of the trial court, particularly in the absence of any showing of actual bias." Lussier, 423 F.3d at 841-2. The district court questioned the jurors about their ability to remain impartial. They assured the court that they could remain objective and properly weigh the evidence for and against Wilson. Wilson's generalized claim of jury bias is insufficient to establish that the trial court abused its discretion in refusing to declare a mistrial. See United States v. Parmley, 108 F.3d 922, 924 (8th Cir. 1997) (per curiam) (district court did not abuse its discretion in accepting jury assurances that their knowledge of prior mistrial would not affect their ability to give a fair trial).

V.

Wilson challenges his indictment based on an allegation that the prosecution committed misconduct by knowingly presenting the Victim's false testimony to the grand jury. "[G]rand jury proceedings are afforded a strong presumption of regularity, and a defendant seeking to overcome that presumption faces a heavy burden." United States v. Hintzman, 806 F.2d 840, 843 (8th Cir. 1986). "The remedy of dismissal for

an indictment due to grand jury abuse is appropriate only upon a showing of actual prejudice to the accused." United States v. Kouba, 822 F.2d 768, 774 (8th Cir. 1987).

Wilson claims that the Victim told the grand jury that he kidnapped her from Oklahoma, whereas she now acknowledges that she left with him willingly. According to the government, she never alleged to the grand jury that she had been kidnapped. The government argues that the Victim only mentioned the kidnapping in her testimony concerning what she told the police when they arrived at Wilson's residence.

Regardless of which version is accurate, Wilson's challenge to the indictment is without merit because "[e]ven assuming . . . that there were errors in the charging decision that may have followed from the conduct of the prosecution . . . , the petit jury's guilty verdict rendered those errors harmless." Kouba, 822 F.2d at 774. "Except in cases involving racial discrimination in the composition of the grand jury, a guilty verdict by the petit jury generally excuses errors at the grand jury level that are 'connected with the charging decision . . . .'" Hintzman, 806 F.2d at 843 (quoting United States v. Mechanik, 475 U.S. 66, 70 (1986)). "A petit jury's 'subsequent guilty verdict not only means that there was probable cause to believe that the defendant[] [was] guilty as charged, but that [he was] in fact guilty as charged beyond a reasonable doubt." Kouba, 822 F.2d at 774 (quoting Mechanik, 475 U.S. at 70).

## VI.

Finally, Wilson charges that the evidence was insufficient to support his conviction on the grounds that the Victim perjured herself before the grand jury and that this undermines the evidentiary basis for the petit jury's verdict. He also charges that Officer Jones, being motivated by a personal "vendetta" against the defendant, removed the cellular phone from the evidence locker and tampered with it. "[O]ur review of the evidence the Government presented at trial is highly deferential." United States v. Kirk, 528 F.3d 1102, 1111 (8th Cir. 2008) (quotation omitted). "Accordingly,

we may reverse only if no rational jury could have found the essential elements of the crime beyond a reasonable doubt." Id.

Regarding the Victim's grand jury testimony, we are at a loss as to how allegations of perjury before the grand jury, meritorious or otherwise, could affect the sufficiency of evidence offered at trial. The Victim testified at trial that Wilson did not kidnap her and that she left Oklahoma willingly in the expectation that he would employ her as a prostitute in Missouri. Wilson does not challenge this testimony. Thus, his allegations of perjured testimony before the grand jury do not support his insufficiency claim because the conviction by the petit jury was based on testimony the veracity of which is not in dispute. This testimony was sufficient to support conviction on the charge of transportation of a minor to engage in criminal sexual activity under 18 U.S.C. § 2423(a).

We have already discussed Wilson's failure to show the inadmissibility of the cellular phone due to gaps in its chain of custody. In any event, the data files stored on his phone were not the only evidence that he produced images of a minor engaged in sexually explicit conduct. The video tape, especially when combined with witness testimony, contained ample evidence to support the guilty verdict on two counts of producing child pornography in violation of 18 U.S.C. § 2251(a). The images stored on his cellular phone only iced the cake of his conviction.

Regarding his conviction for being a felon in possession of a firearm, Wilson stipulated that he had been previously convicted of a felony. He does not challenge the seizure of the firearm from his residence. Witnesses testified that the firearm belonged to Wilson. This was sufficient to support a conviction under 18 U.S.C. § 922(g).

VII.

Accordingly, the judgment is affirmed.

———————

-15-