PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

       *Plaintiff-Appellee,*

v.

MICHAEL MALLOY,

       *Defendant-Appellant.*

No. 08-4136

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(8:06-cr-00574-AW-1)

Argued: March 25, 2009

Decided: May 28, 2009

Before DUNCAN, Circuit Judge, Robert J. CONRAD, Jr.,
Chief United States District Judge for the Western District
of North Carolina, sitting by designation, and Thomas D.
SCHROEDER, United States District Judge for the Middle
District of North Carolina, sitting by designation.

Affirmed by published opinion. Judge Duncan wrote the opinion, in which Judge Conrad and Judge Schroeder joined.

## COUNSEL

**ARGUED:** Gary Eugene Bair, BENNETT & BAIR, LLC, Greenbelt, Maryland, for Appellant. Michael Joseph Leotta,

OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, Michele W. Sartori, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.

---

**OPINION**

DUNCAN, Circuit Judge:

Appellant Michael Malloy challenges his conviction and sentence under 18 U.S.C. § 2251(a) for producing a videotape of himself and another adult having sex with a 14 year-old girl ("S.G."). Among other issues, Malloy contends that the statute is constitutionally infirm unless we interpret it to incorporate a reasonable mistake of age defense. For the reasons that follow, we affirm Malloy's conviction and sentence.

I.

In October 2005, Malloy's friend, Aaron Burroughs, brought S.G. to Malloy's home for the purpose of engaging in sex with the two men. Petr.'s Br. at 4; J.A. 197-98. Burroughs coached a junior varsity high school football team of which S.G. was the manager. Malloy was a 33 year-old United States Capital Police Officer. At the time, S.G. was a 14 year-old girl, born on November 6, 1990, who had recently started tenth grade. Burroughs and Malloy videotaped each other having sex with S.G. Later in the fall of 2005, Burroughs again brought S.G. to Malloy's home to engage in sex with the two men. On this second occasion, S.G. was either 14 or had just turned 15 years of age.

The FBI began investigating in the summer of 2006. After speaking with S.G. and Burroughs, FBI agents interviewed

Malloy and also executed a search warrant at his residence. Malloy admitted to the agents that he had had sex with S.G. on two occasions and had videotaped one encounter with his Sony camcorder. Malloy also admitted that he thought S.G. "looked young" when he first met her. J.A. 60, 266, 275. Other than asking her how old she was, however, he did not further investigate S.G.'s age. At Malloy's residence, FBI agents recovered the Sony camcorder and the videotape of the sexual encounter.

Malloy was charged with sexual exploitation of a minor for the purpose of producing a visual depiction in violation of 18 U.S.C. § 2251(a). This charge contains three essential elements: (1) the victim was less than 18 years old; (2) the defendant used, employed, persuaded, induced, enticed, or coerced the minor to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct; and (3) the visual depiction was produced using materials that had been transported in interstate or foreign commerce.

Malloy filed pretrial motions, including a motion to dismiss the indictment as exceeding Congress's power under the Commerce Clause. The government filed a motion in limine to preclude Malloy from offering a defense of reasonable mistake of age. At a pretrial motions hearing on September 11, 2007, the district court denied Malloy's motions. The court held that under Supreme Court and Fourth Circuit precedent, "the commerce clause does empower Congress to regulate purely local intrastate activities . . . so long as they are part of an economic class of activities that have a substantial effect on interstate commerce." J.A. 82. The court granted the government's motion to disallow a mistake of age defense, reasoning that

> this statute is very, very similar to statutory rape kinds of cases. Most jurisdictions in this country simply will not allow reasonable mistake-of-fact defenses for these type[s] of crimes for the reasons

that the legislature made it a crime and they pro-
scribed this when you're dealing with minors to pro-
tect minors. And so . . . if she's under 18, she was
the type of person that Congress intended to protect.[1]

J.A. 111.

At trial, Malloy stipulated that the videotape at issue was
"a visual depiction showing the defendant engaging in genital
and oral sexual intercourse with S.G.," and that it "proves
beyond a reasonable doubt that the defendant used S.G. to
take part in sexually explicit conduct for the purpose of pro-

---

[1]The district court carefully and repeatedly considered Malloy's reason-
able mistake of age defense. After initially granting the government's
motion to preclude the defense, for example, the court allowed Malloy's
counsel to "proffer the circumstances that reflects high care, high standard,
almost a faultless situation where there's no way that your client was able
to determine that she was under 18." J.A. 110. After hearing the evidence
counsel proposed, the court refused to reverse its earlier ruling because
"[t]here was no proffer that the defendant, Mr. Malloy, investigated her
age or saw any documents that she provided that showed that she was over
18." J.A. 154.

Moreover, Malloy's counsel was allowed to present much of the evi-
dence that would have supported a reasonable mistake of age defense in
the context of a challenge to the government's proof on the essential ele-
ment of the victim's actual age. The court allowed counsel to ask S.G.
such questions as what Burroughs instructed her to tell anyone who asked
about her age; whether she told the defendant her age; and whether she
posted misleading information about her age on the internet. Further, Mal-
loy repeatedly attacked the victim's credibility by impeaching her with her
allegedly prior inconsistent statements regarding her age. The court
allowed Malloy to testify that he was told that the victim was a 19 year-
old college student who had just entered her sophomore year at Bowie
State. The court admitted such evidence despite subsequently concluding
that it "had very little relevance at all and it got very close to the prohibi-
tion that the court gave from the inception, that reasonable mistake of age
just isn't a defense under these facts." J.A. 337. Indeed, the court com-
mented that "[i]n retrospect I probably shouldn't have allowed any of it
because it really is not relevant. The defense really just had speculation."
J.A. 338.

ducing a visual depiction of that conduct." J.A. 185, 403. The government established that S.G. was born in November 1990 through S.G.'s testimony and through a certified true copy of her birth certificate. She was therefore 14 years old when Malloy videotaped her having sex with him in October 2005. The government also produced uncontested evidence that the Sony video camera Malloy used was manufactured in Japan and that the videotape cassette at issue was manufactured in Mexico.

At the close of the government's evidence, Malloy moved for a judgment of acquittal. He argued that there had been an impermissible constructive amendment to the indictment because it incorrectly required that the prohibited act be done "knowingly." J.A. 321. The court denied the motion, ruling that the term "knowingly" in the indictment was merely "superfluous" and that no constructive amendment had occurred. J.A. 328, 330-31. On September 20, 2007, the jury returned a verdict of guilty.

Although Malloy's advisory sentencing guidelines range was 324 to 360 months, the court sentenced him to the statutory mandatory minimum of 15 years (180 months). In doing so, the court rejected Malloy's argument that the mandatory minimum was grossly disproportionate to the crime committed in violation of the Eighth Amendment. This appeal followed.

Malloy presents four issues on appeal: (1) that the district court erred by refusing to allow a reasonable mistake of age defense; (2) that that there was a constructive amendment to the indictment under which he was charged; (3) that § 2251(a) as applied to him was not a valid exercise of Congress's Commerce Clause power; and (4) that his 15-year mandatory minimum sentence violated the Eighth Amendment's prohibition against cruel and unusual punishment. We consider each in turn.

II.

A.

Malloy first argues that a mistake of age defense is constitutionally required. Malloy maintains that without such a defense § 2251(a) is unconstitutionally overbroad under the First Amendment because it chills a substantial amount of protected speech. This court reviews a challenge to the constitutionality of a federal statute de novo. *United States v. Buculei*, 262 F.3d 322, 327 (4th Cir. 2001).

To comprehensively address Malloy's challenge, we conduct a sequential analysis. We focus first on the statute itself. In doing so, we find that the statutory text, legislative history, and judicial interpretation compel the conclusion that knowledge of the victim's age is neither an element of the offense nor textually available as an affirmative defense. Informed by this statutory analysis, we then turn to the crux of Malloy's argument: that in order for the statute to avoid unconstitutional overbreadth we must engraft onto it a reasonable mistake of age defense.

1.

We begin with an analysis of the statute, which provides in pertinent part:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . shall be punished . . . if that visual depiction was produced using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means . . . .

18 U.S.C. § 2251(a). It is immediately apparent that the statute on its face contains no requirement that the defendant know that the victim is a minor.

In fact, Congress considered and explicitly rejected such a knowledge requirement. The House Conference Report clarified:

> The Senate Bill contains an express requirement in proposed section 2251(a) that the crime be committed 'knowingly.' The House amendment does not. The Conference substitute accepts the House provision *with the intent that it is not a necessary element of a prosecution that the defendant knew the actual age of the child*.

H.R. Rep. No. 95-811, at 5 (1977) (Conf. Rep.) (emphasis added); *see also*; S. Rep. No. 95-601, at 5 (1977).

The Supreme Court, too, has opined that knowledge of the age of the victim is not required to convict a defendant under § 2251(a). In *United States v. X-Citement Video, Inc.*, the Supreme Court considered the interpretation of § 2252, which prohibits the transportation, shipping, reception, or distribution of pornography produced using underage individuals. 513 U.S. 64, 68 (1994). The Court informed its analysis of § 2252 through a comparison with § 2251(a). The Court explained that when Congress amended the two statutes in 1977, "the new bill retained the adverb 'knowingly' in § 2252 while simultaneously deleting the word 'knowingly' from § 2251(a)." *Id.* at 77. The Court reasoned that the difference in congressional intent with respect to the statute prohibiting the dissemination or receipt of child pornography, on the one hand (i.e., § 2252), and the production of child pornography, on the other (i.e., § 2251(a)), "reflects the reality that producers are more conveniently able to ascertain the age of performers. It thus makes sense to impose the risk of error on producers" of child pornography. *Id.* at 77 n.5.

Like the district court here, the Supreme Court drew an analogy between § 2251(a) and traditional statutory rape offenses, stating that the presumption of a mens rea requirement in criminal law "expressly excepted sex offenses, such as [statutory] rape, in which the victim's actual age was determinative despite defendant's reasonable belief that the girl had reached [the] age of consent." 513 U.S. at 72 n.2 (citation and quotations omitted). The Court stated that under § 2251(a), just like under traditional statutory rape laws where mistake of age is not a defense, "the perpetrator confronts the underage victim personally and may reasonably be required to ascertain that victim's age." 513 U.S. at 72 n.2. The Court also noted that the "opportunity for reasonable mistake as to age" is extremely low in cases where the defendant comes into direct contact with the victim and she is available for questioning. *Id.* "[P]roducers may be convicted under § 2251(a) without proof they had knowledge of age." *Id.* at 77 n.5. A defendant's awareness of the victim's minority is not an element of the offense.

Further, the text of § 2251(a) does not include an affirmative defense for reasonable mistake of age. Evidence of Malloy's belief regarding S.G.'s age is irrelevant under the statute, where it is the actual age of the victim that controls. When Congress intends a statute to include an affirmative defense, particularly in the context of the laws involving child pornography and sexual exploitation of children, it can and has included the defense in the statute's text. *See, e.g.*, 18 U.S.C. § 2243(c) (establishing a reasonable mistake of age defense to a charge of sexual abuse of a minor in a prison or institution, or in the special maritime or territorial jurisdiction of the United States); 18 U.S.C. § 2252A(d) (allowing an affirmative defense to possession of child pornography charge if the defendant possessed less than three images and took steps to destroy or report them). It has not done so here.

2.

We now turn to a consideration of Malloy's constitutional challenge. Apparently recognizing that the statutory text pro-

vides no grounds for raising a reasonable mistake of age defense, Malloy contends that one must be judicially engrafted for the statute to avoid reaching too broadly and chilling a substantial amount of protected speech.

We first consider Malloy's argument in light of the rulings of our sister circuits that have addressed whether a reasonable mistake of age defense is constitutionally necessary for statutes that prohibit the production of child pornography to avoid unconstitutional overbreadth. We then turn to Supreme Court guidance to analyze Malloy's overbreadth argument. Informed by this analysis, we conclude that no reasonable mistake of age defense is constitutionally required.

a.

Malloy's argument mirrors, and relies heavily upon, a Ninth Circuit decision, *United States v. United States District Court* ("*District Court*"), 858 F.2d 534 (9th Cir. 1988), which pre-dates the Supreme Court's pronouncements in *X-Citement Video*. A divided panel in *District Court* held that, although § 2251(a) does not provide for a mistake of age defense, the First Amendment requires reading one in. The majority noted that "we must be careful to ensure that, in regulating unprotected speech [here, child pornography], Congress does not also chill speech that is protected [here, adult pornography]." 858 F.3d at 538. Without a reasonable mistake of age defense, the majority reasoned, producers of adult pornography "will almost certainly be deterred from producing such materials depicting youthful-looking adult actors; such actors may have considerable difficulty in finding producers willing to cast them; [and] audiences wishing to view films featuring such actors would be denied the opportunity." *Id.* at 540. Since this exclusion would, according to the majority, "seriously chill protected speech," *id.*, they engrafted a mistake of age defense, concluding that "Congress would prefer section

2251(a) with a reasonable mistake of age defense to no statute at all."**²** *Id.* at 542.

The Eighth and Eleventh Circuits have ruled to the contrary, holding that no mistake of age defense is necessary in statutes prohibiting the production of child pornography. In *Gilmour v. Rogerson*, the Eighth Circuit held that the Constitution does not require a mistake of age defense under a state statute, Iowa Code § 728.12(1),**³** that is very similar to § 2251. 117 F.3d 368, 373 (8th Cir. 1997), *cert. denied* 522 U.S. 1122 (1998). There, Gilmour took sexually explicit photographs of a 17 year-old girl. On more compelling facts than those presented here, Gilmour had met the girl in a bar, was told by the girl's boyfriend that she was 22, and also claimed to have verified her age by viewing her driver's license. Like Malloy,

---

**²**The majority noted that the defense was very narrow: "A defendant may avoid conviction only by showing, by clear and convincing evidence, that he did not know, and could not reasonably have learned, that the actor or actress was under 18 years of age." *Id.* at 543. As such, it does not appear that *District Court* helps Malloy. Beyond asking S.G. her age, he did not conduct any investigation or view any documentary evidence. As the district court here suggested, it is unlikely that such cursory questioning would meet the "clear and convincing evidence" standard. Implicitly acknowledging these evidentiary deficiencies, at oral argument Malloy's counsel requested that this court engraft the reasonable mistake of age defense with a *lower* "preponderance of the evidence" standard. However, for the reasons that follow, we reject the argument that § 2251(a) requires any affirmative defense.

**³**Iowa Code § 728.12(1), titled "Sexual Exploitation of a Minor," provides:

> It shall be unlawful to employ, use, persuade, induce, entice, coerce, solicit, knowingly permit, or otherwise cause or attempt to cause a minor to engage in a prohibited sexual act or the simulation of a prohibited sexual act. A person must know, or have reason to know, or intend that the act or simulated act may be photographed, filmed, or otherwise preserved in a negative, slide, book, magazine, computer, computer disk, or other print or visual medium . . . or in any other type of storage system."

Iowa Code § 728.12(1); *see Gilmour*, 117 F.3d at 370.

Gilmour argued that the First Amendment required that he be allowed to assert a reasonable mistake of age defense as an affirmative defense to his prosecution. *Gilmour*, 117 F.3d at 372-73. The Eighth Circuit rejected that argument, holding that the state statute did not provide a reasonable mistake of age defense and was constitutional without one. The court clarified that under "criminal statutes that protect children from sexual predators . . . the child's age is a long-established exception to the general rule that proof of *mens rea* is required; 'the victim's actual age [is] determinative despite defendant's reasonable belief that the girl had reached the age of consent.'" *Id.* at 370 (citing *Morissette v. United States*, 342 U.S. 246, 251 n.8 (1952)). In doing so, the Eighth Circuit compared the state statute with § 2251(a) and explicitly considered—and rejected—the Ninth Circuit's analysis in *District Court*. 117 F.3d at 372.

In *United States v. Deverso*, the Eleventh Circuit likewise held that no affirmative defense was constitutionally required under another provision of the same statute at issue here. 518 F.3d 1250 (11th Cir. 2008). Deverso was charged with, among other things, employing a minor to engage in sexually explicit conduct outside the United States "for the purpose of producing [a] visual depiction of such conduct" and transporting the visual depiction into the United States in violation of 18 U.S.C. § 2251(c)(1) & (2). *Id.* at 1252, 1257. Deverso contended that he was entitled to a mistake of age defense. The Eleventh Circuit found that knowledge of age is not an element of the offense and "that the Constitution does not mandate a mistake of age defense under § 2251." *Id.* at 1258. Like the Eighth Circuit in *Gilmour*, the Eleventh Circuit explicitly rejected the Ninth Circuit's holding in *District Court*. *Id.* at 1257-58.

b.

We turn now to an analysis of the statute under the over-breadth doctrine, on which Malloy's First Amendment chal-

lenge depends. The Supreme Court has held that "[a]ccording to our First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of protected speech. The doctrine seeks to strike a balance between competing social costs." *United States v. Williams*, 128 S. Ct. 1830, 1838 (2008). The government interest in prohibiting criminal conduct must be weighed against the danger of chilling constitutionally protected speech. *Id.* "In order to maintain an appropriate balance, we have vigorously enforced the requirement that a statute's overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Id.*; *see also New York v. Ferber*, 458 U.S. 747, 771 (1982) (holding that a statute "should not be invalidated for overbreadth unless it reaches a substantial number of impermissible applications"). The Supreme Court has held that facial challenges based on the overbreadth doctrine "are especially to be discouraged." *Sabri v. United States*, 541 U.S. 600, 609 (2004).

In *Ferber*, the Supreme Court comprehensively considered child pornography in the context of an overbreadth challenge under the First Amendment. In weighing the government's interest as required by the overbreadth analysis, the Court found that "the exploitive use of children in the production of pornography has become a serious national problem" and that "[t]he prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *Ferber*, 458 U.S. at 749, 757 (citations omitted). The Court cited a study showing that "sexually exploited children are unable to develop healthy affectionate relationships in later life, have sexual dysfunctions, and have a tendency to become sexual abusers as adults," *id.* at 758 n.9 (citation omitted), as well as other research chronicling the destructive effects of child pornography, *id.* at 758-60 nn.9 & 10. The government has a compelling interest in protecting even children who lie about their age. As the Eighth Circuit notes, "the State may legitimately protect children from self-destructive decisions reflecting the youthful poor judgment that makes them, in the

eyes of the law, 'beneath the age of consent.'"[4] *Gilmour*, 117 F.3d at 372.

Because of the surpassing importance of the government's interest in safeguarding the physical and psychological well-being of children,[5] the government has greater leeway to regulate child pornography than it does other areas. *See Ferber*, 458 F.3d at 756 ("Like obscenity statutes, laws directed at the dissemination of child pornography run the risk of suppressing protected expression by allowing the hand of the censor to become unduly heavy. . . . [H]owever, we are persuaded that the States are entitled to greater leeway in the regulation of pornographic depictions of children.").

Having considered the strong government interest identified by the Supreme Court in suppressing the production of child pornography, we now assess whether § 2251(a) as written poses a threat of chilling a substantial amount of protected expressive activity. The protected expression the Ninth Circuit found to be threatened by the statute was the production of adult pornography. Malloy's argument echoes the Ninth

---

[4]Similarly, the dissenting judge in *District Court* reasoned that

> Congress intended to protect children . . . who try to pass as adults to appear in pornography. Such children are in grave danger of sacrificing their physiological, emotional, and mental health . . . . These children are inexperienced and uneducated; most important, they lack the foresight we attribute only to adults. Congress has chosen to protect such children against their own immaturity, against the unreasoned, desperate choices children are wont to make.

858 F.3d at 544 (Beezer, J., dissenting).

[5]In arguing that the government's interest in preventing child pornography is of overriding importance, the Supreme Court has maintained that such regulation is critical because "[a] democratic society rests, for its continuance, upon the healthy, well-rounded growth of young people into full maturity as citizens." *Ferber*, 548 F.3d at 757 (quotation and citation omitted).

Circuit's analysis. *See* Petr.'s Br. at 14. We are persuaded by neither.

We note as a practical matter that little legitimate pornography would be chilled because producers of pornography are *already* required to authenticate actors' ages.[6] *See* 18 U.S.C. § 2257(b)(1) (requiring that anyone who produces pornography shall "ascertain, by examination of an identification document containing such information, the performer's name and date of birth"). There are, moreover, other reasons why § 2251(a) does not pose a substantial risk of chilling protected expression. First, only a subset of adult pornography is at issue—namely, pornography made by producers who seek to use "youthful-looking" actors or actresses. Second, because the children depicted in child pornography frequently cannot be found, the prosecutor must show that the subject is a minor solely from the pictures. Consequently, most prosecutions for child pornography involve a subject that is not simply "youthful-looking" but unmistakably a child.[7] H.R. Rep. No.

---

[6]While it is certainly true, as the majority in *District Court* notes, that documents can be forged, *District Court*, 858 F.3d at 540, the originals exist somewhere (e.g., original birth certificates exist at the hospital of birth, etc.) and the producer of pornography, because he has direct contact with the subject, has access to the original documents, *see id.* at 546 (Beezer, J., dissenting). If the originals do not exist, the government would have a very difficult time proving beyond a reasonable doubt that the actor or actress is a minor (unless he or she is unmistakably a child, *see infra* note 9 and accompanying text).

[7]It was precisely this problem that prompted Congress to raise the age of minority for the purpose of §§ 2251 & 2252 from 16 to 18 years. H.R. Rep. No. 98-536, at 3, 7-8. As the Committee Report explains, the amendment "changes the definition of minors protected by this chapter from a person under the age of 16 years, to a person under the age 18 years. . . . Usually the child who is depicted in child pornography cannot be located. Proof of the child's age has therefore been by circumstantial evidence. . . . By raising the age to 18, if the child depicted does not look like an adult, a conviction can be obtained." *Id.* The report added, "[r]aising the age . . . would facilitate the prosecution of child pornography cases and raise the effective age of protection of children from these practices, probably not to 18 years of age, but perhaps to 16." *Id.* at 3.

98-536, at 3, 7-8 (1984). Statutes like § 2251(a) will not inhibit producers of adult pornography from using youthful-looking subjects who are not unmistakably children because prosecution in such cases is rare. *See District Court*, 858 F.2d. at 546 (Beezer, J. dissenting). And finally, producers of adult pornography who wish to use youthful-looking subjects will not be deterred by § 2251(a) for profit reasons: pornography is lucrative.[8] High demand creates powerful incentives that will not be inhibited by a slim chance of prosecution. Given the superior ability of a producer to ascertain the age of the subject—through visual contact, documentary verification, direct questioning, and reputational information—and the substantial profit that exists in producing adult pornography, we think it unlikely that producers of such pornography will be chilled, much less substantially chilled, by the unavailability of a mistake of age defense in § 2251(a).[9]

Because the government interest at stake is significant and § 2251(a) does not substantially chill protected speech (especially relative to the statute's plainly legitimate sweep), we decline to engraft onto it a reasonable mistake of age defense that is neither grounded in the statutory text nor mandated by the Constitution.

---

[8]*See, e.g.*, BETH BARRETT, *Porn is $12 Billion Industry, but Profits Leave Valley*, DAILY NEWS, June 5, 2007 (explaining that, in 2006, pornography was a $12 billion industry and that it had quadrupled from 1991 to 2006); *Porn Profits: Corporate America's Secret*, ABCNEWS.COM, Jan. 28, 2003, *available at* http://abcnews.go.com/Primetime/Story?id=132001&page=1 (last accessed on April 6, 2009) (explaining that, in 2002, pornography was a $10 billion industry—bigger than the NFL, the NBA, and Major League Baseball combined—and that some of the nation's best-known corporations are quietly sharing in its significant growth and profits).

[9]As the Supreme Court noted in *X-Citement Video*, "the perpetrator confronts the underage victim personally and may reasonably be required to ascertain that victim's age," and the opportunity for a reasonable mistake of age is extremely low when there is such direct contact. 513 U.S. at 72 n.2.

B.

Malloy also argues that his constitutional due process rights were violated because an "accused criminal has a fundamental due process right to present a defense." Petr.'s Br. at 12. We review a properly preserved constitutional claim de novo. *United States v. Hall*, 551 F.3d 257, 266 (4th Cir. 2009).

Contrary to Malloy's assertion, the record before us indicates that he was afforded ample opportunity to defend himself. For instance, as we have noted, he was able to present evidence intended to undermine the government's claim that S.G. was a minor. *See supra* note 1. As a constitutional challenge, Malloy's argument therefore fails.

While Malloy's argument is couched in terms of his due process right to defend himself, the crux of his complaint is that he was not allowed to present a particular defense. As such, it is better framed as an evidentiary argument. We review a district court's refusal to admit defense evidence under an abuse of discretion standard. *United States v. Uzenski*, 434 F.3d 690, 708-09 (4th Cir. 2006). "A trial court abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion or relies on erroneous factual or legal premises." *Id.* at 709 (quotations and citation omitted).

Malloy's argument is without merit because "a defendant's right to present a defense is not absolute: criminal defendants do not have a right to present evidence that the district court, in its discretion, deems irrelevant or immaterial." *United States v. Prince-Oyibo*, 320 F.3d 494, 501 (4th Cir. 2003); *see also United States v. Etheredge*, 254 F. App'x 969, 970 (4th Cir. 2007) (affirming a district court's refusal to allow evidence despite the defendant's argument that it "hindered his ability to present a defense"). In *Prince-Oyibo*, for example, the defendant argued that his fear of religious persecution was an important part of his defense. 320 F.3d at 501. This court,

however, held that "the district court was within its discretion in excluding the evidence of persecution as irrelevant" to whether Prince-Oyibo intended to use an altered visa to enter the United States. *Id.* at 502. Here, the evidence that Malloy wished to present in his defense was irrelevant to the crime charged and, therefore, it was properly excluded by the district court.[10] Evidence of a particular type of defense—here, reasonable mistake of age—can be properly excluded by the court without infringing on the general right of a defendant to present a defense.

### III.

Malloy next argues that the government and district court constructively amended his indictment. The indictment charged that Malloy

> did *knowingly* employ, use, entice and coerce a minor female to engage in sexually explicit conduct, to wit, graphic sexual intercourse, for the purpose of producing a visual depiction of such conduct, and said depiction was produced using materials that have been mailed, shipped, and transported in interstate and foreign commerce by any means.

J.A. 10 (emphasis added). Malloy argues that since the government was not required to prove that he *knew* the age of S.G. and the jury instructions stated that he was not so required, the government's burden was impermissibly lowered, constructively amending his indictment. This court reviews de novo a claim of constructive amendment to an indictment. *See United States v. Floresca*, 38 F.3d 706, 714 (4th Cir. 1994).

---

[10]As noted, the Supreme Court analogized § 2251(a) to statutory rape laws—*see X-Citement Video*, 513 U.S. at 72 n.2—under which no reasonable mistake of age defense has traditionally been permitted, despite a defendant's general right to present a defense.

A constructive amendment occurs where "the indictment is altered to change the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment." *United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999). When the government, through its presentation of evidence or its argument, or the district court, through its instructions to the jury, or both, broadens the bases for conviction beyond those charged in the indictment, a constructive amendment—sometimes referred to as a fatal variance—occurs. *See United States v. Redd*, 161 F.3d 793, 795 (4th Cir. 1998). Not all differences between an indictment and the proof offered at trial or the jury instructions rise to the "fatal" level of a constructive amendment. *See Randall*, 171 F.3d at 203. When different evidence or jury instructions are presented at trial but do not alter the crime charged in the indictment, a mere variance occurs. *Id.* "A mere variance does not violate a defendant's constitutional rights unless it prejudices the defendant either by surprising him at trial and hindering the preparation of his defense, or by exposing him to the danger of a second prosecution for the same offense." *Id.* If the "indictment provides the defendant with adequate notice of the charges against him and is sufficient to allow the defendant to plead it as a bar to subsequent prosecutions, a variance in proof at trial will not prejudice the defendant." *Redd*, 161 F.3d at 795-96.

Malloy claims that the indictment against him was constructively amended because the indictment included the word "knowingly" even though the elements of the offense charged in the indictment do not contain a knowledge element. He argues that, despite the inclusion of the word "knowingly," the government was not required to prove that his actions were "knowing" in order to obtain a conviction; he was prevented from showing that his actions were not "knowing" (i.e., he could not raise the reasonable mistake of age defense); and the jury was instructed that what Malloy knew or believed about S.G.'s age was irrelevant. Petr.'s Br. at 20; J.A. 321-31, 367.

This argument is unavailing. For the variance to be fatal, Malloy must show that it prejudiced his defense. The record reveals an absence of prejudice here. Approximately two months before trial, the government filed a motion in limine that set forth the language of § 2251(a) as well as the voluminous case law supporting the proposition that "knowingly" is not an element of the charge and that the government did not have to prove that Malloy knew that S.G. was a minor. Indeed, Malloy filed a responsive brief—again, well before trial—in which he agreed with the government that it did not have to put on any proof with respect to Malloy's knowledge of S.G.'s age. As such, Malloy cannot reasonably claim that the word "knowingly" in the indictment resulted in actual prejudice. Nor, given the pre-trial pleadings, can he claim that he was convicted of "a distinct, unindicted offense" from that set forth in the indictment. *Floresca*, 38 F.3d at 710. Malloy has shown no danger that he will be exposed to possible re-prosecution on the § 2251(a) charge in the future. He was made aware of the language of the statute under which he was charged far in advance of trial.[11]

Here, the crime charged in the indictment—the sexual exploitation of S.G. for the purpose of producing a visual depiction in violation of 18 U.S.C. § 2251(a)—was the charge on which Malloy was tried. There was no surprise, no hindrance in trial preparation, and no prejudice. Malloy knew that the word "knowingly" was not in the statute, and he knew that no knowledge element was included in the standard jury

---

[11]Although not controlling, we note that the Eleventh Circuit addressed this issue as well in *Deverso*, 518 F.3d 1250. There, the defendant was convicted under a different subsection of the same general statute at issue in this case, § 2251, and the indictment also contained the word "knowingly." 518 F.3d at 1258 n.2. The Eleventh Circuit concluded that there was no constructive amendment and found "that the Government's inclusion of the word 'knowingly' in the indictment was mere surplusage. Congress defines the elements of an offense, not the charging document. Surplusage in an indictment may be deleted without any legal error." *Id.* (citation omitted).

instructions. Malloy suffered no prejudice; he was not con-
victed of a distinct, unindicted offense; and there is no danger
that he will be re-prosecuted for the same offense. Conse-
quently, there was no constructive amendment.

IV.

Malloy next argues that § 2251(a) as applied to his case
exceeds Congress's authority under the Commerce Clause.
We review de novo a challenge to the constitutionality of a
federal statute. *United States v. Buculei*, 262 F.3d 322, 327
(4th Cir. 2001).

In *United States v. Forrest*, this court upheld a defendant's
convictions for production and possession of child pornogra-
phy which itself had never crossed state lines, but which was
produced using cameras that were manufactured outside the
state. 429 F.3d 73, 78-79 (4th Cir. 2005). In doing so, we
cited the Supreme Court's holding in *Gonzales v. Raich*, 545
U.S. 1 (2005), which "reaffirmed the long-standing principle
that the Commerce Clause empowers Congress to regulate
purely local intrastate activities, so long as they are part of an
'economic class of activities that have a substantial effect on
interstate commerce.'" *Forrest*, 429 F.3d at 78 (citing *Raich*,
545 U.S. at 16). This court held that "[b]ecause Congress pos-
sessed a rational basis for concluding that the local production
and possession of child pornography substantially affect inter-
state commerce, 'the de minimis character of individual
instances arising under the statute is of no consequence.'"
*Forrest*, 429 F.3d at 79 (citing *Raich*, 545 U.S. at 17).

Our sister circuits to have considered such a Commerce
Clause challenge in light of *Raich* have similarly upheld the
constitutionality of federal child pornography statutes in cases
of purely intrastate possession or production. *See, e.g.*, *United
States v. McCalla*, 545 F.3d 750, 755 (9th Cir. 2008) ("Given
Congress's broad interest in preventing sexual exploitation of
children, it is eminently rational that Congress would seek to

regulate intrastate production of pornography even where there is no evidence that it was created for commercial purposes."); *United States v. Blum*, 534 F.3d 608, 609, 611 (7th Cir. 2008) (holding that a conviction under § 2251(a) for the local production of child pornography does not exceed Congress's Commerce Clause authority and noting that "Congress in enacting [§ 2251] recognized the danger posed by any child pornography regardless of origin"); *United States v. Sullivan*, 451 F.3d 884, 890-92 (D.C. Cir. 2006) (holding that the application of § 2252A to the intrastate possession of child pornography does not exceed Congress's Commerce Clause authority); *United States v. Maxwell*, 446 F.3d 1210, 1218 (11th Cir. 2006) ("[I]t is within Congress's authority to regulate all intrastate possession of child pornography."); *United States v. Chambers*, 441 F.3d 438, 454-55 (6th Cir. 2006) (holding that a conviction for possession of child pornography in Kentucky, where the Polaroid film which was used to produce the images was manufactured out of state, does not exceed Congress's Commerce Clause authority); *United States v. Jeronimo-Bautista*, 425 F.3d 1266, 1272-73 (10th Cir. 2005) (holding that a conviction under § 2251(a) for local production of child pornography when the materials used to produce the contraband had traveled in interstate commerce does not exceed Congress's Commerce Clause authority).

Despite this well-settled federal law, Malloy argues that because he allegedly did not know that he was producing child pornography at the time he videotaped himself and his friend having sex with 14 year-old S.G., "he was neither a consumer nor supplier of child pornography" and therefore his production of child pornography had a "null effect" on the "national market for child pornography." Petr.'s Br. at 28. But that is not the test.[12] This court need not examine the specific

---

[12]We note, as well, that this construction is merely an attempt by Malloy to hang his reasonable mistake of age defense on another constitutional hook.

effect on commerce of this defendant's child pornography activities.[13]

Here, there was unquestionably "local" production of child pornography with a video camera and videotape that had traveled in foreign commerce. Congress has concluded, and this court has upheld Congress's conclusion, that such production is "part of an 'economic class of activities that have a substantial effect on interstate commerce.'" *Forrest*, 429 F.3d at 78 (citing *Raich*, 545 U.S. at 16). Malloy's claim that his conduct was "unknowing" does not alter this result: the test is not whether the defendant knew he was engaging in an "economic class of activities that have a substantial effect on interstate commerce," but whether he in fact was. *Forrest*, 429 F.3d at 78. Consequently, we hold that § 2251(a) as applied to Malloy was a valid exercise of Congress's Commerce Clause power.

V.

Finally, Malloy challenges the 15-year sentence imposed by the district court pursuant to the statutory mandatory minimum under 18 U.S.C. § 2251(e) as a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Again, claims of constitutional error are reviewed de novo. *United States v. Myers*, 280 F. 3d 407, 416 (4th Cir. 2002).

This court has held that "proportionality review [under the Eighth Amendment's cruel and unusual punishment clause] is not available for any sentence less than life imprisonment without the possibility of parole." *United States v. Ming Hong*, 242 F.3d 528, 532 (4th Cir. 2001). As Malloy recog-

---

[13]Again, as we noted in *Forrest*, "[b]ecause Congress possessed a rational basis for concluding that the local production and possession of child pornography substantially affect interstate commerce, '*the de minimis character of individual instances arising under the statute is of no consequence*.'" 429 F.3d at 79 (citing *Raich*, 545 U.S. at 17) (emphasis added).

nized at oral argument, because he received less than life without parole, proportionality review is not available under our precedent.[14]

## VI.

For the aforementioned reasons, Malloy's conviction and sentence are

*AFFIRMED*.

---

[14]Even if proportionality review were available, however, it likely would not change the result here. The Supreme Court has explained that "[s]evere, mandatory penalties may be cruel, but they are not unusual in the constitutional sense, having been employed in various forms throughout our Nation's history." *Harmelin v. Michigan*, 501 U.S. 957, 994-95 (1991). The imposition of Malloy's 15-year sentence was for the very serious offense of sexual exploitation of a minor, and it is a result mandated by Congress. Our sister circuits to have considered the issue have also rejected the Eighth Amendment challenge to § 2251. *See United States v. Higgins*, No. 08-13872, 2009 WL 212078 (11th Cir. Jan. 30, 2009) (unpublished); *United States v. Davis*, No. 08-30154, 2009 WL 33631 (5th Cir. Jan. 7, 2009) (unpublished); *United States v. Polk*, 546 F.3d 74, 74-78 (1st Cir. 2008).