**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-4082**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

SHARU BEY, a/k/a Jeffrey Lewis,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Frank D. Whitney, District Judge. (3:07-cr-00079-FDW-2)

Submitted: January 26, 2011          Decided: March 4, 2011

Before NIEMEYER, KING, and DAVIS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Steven T. Meier, MEIER LAW, Charlotte, North Carolina, for Appellant. Anne M. Tompkins, United States Attorney, Charlotte, North Carolina; Amy E. Ray, Assistant United States Attorney, Asheville, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Sharu Bey was convicted by a jury of conspiracy to possess with intent to distribute at least 100 kilograms of marijuana, 21 U.S.C. § 846 (2006) (Count One); possession with intent to distribute at least 100 kilograms of marijuana, and aiding or abetting, 21 U.S.C. § 841(a)(1), 18 U.S.C. § 2 (2006) (Count Two); and unlawful possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1) (2006) (Count Four).[*] Bey appeals his conviction and sentence, alleging that (1) the district court erred in entering judgment based on a defective verdict form that constructively amended the indictment; (2) the court clearly erred in determining the statutory sentencing range because the jury's finding on drug amounts did not comply with Apprendi v. New Jersey, 530 U.S. 466 (2000); and (3) his sentence was improperly enhanced based on acquitted conduct and enhancements that amounted to impermissible double counting. Bey also seeks leave to file two pro se supplemental briefs arguing these issues and raising new issues. We grant leave to file the supplemental briefs. However, we find no merit in any

---

[*] Bey was tried jointly with co-defendants Ruben Barraza and Ruben Garcia on charges brought in a third superseding indictment. He was acquitted of using and carrying a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c) (2006) (Count Three).

of the issues Bey raises, and affirm the conviction and sentence.

Bey was arrested on March 22, 2007, after he received fifty pounds of marijuana from co-defendant Juan Carlos Sanchez-Solorzano in Charlotte, North Carolina, two blocks from a warehouse where Sanchez-Solorzano and co-defendant Patrick Schwenke had unloaded a 2100-pound delivery of marijuana from Texas earlier the same day. In an interview immediately following his arrest, Bey said that he, not his passenger, was responsible for the gun that was seized from Bey's car.

At Bey's trial, Sanchez-Solorzano testified that, beginning in 2003, Bey bought marijuana regularly from Schwenke at least twenty times, in quantities ranging from fifteen to seventy-five pounds, most often in fifty-pound quantities. Sanchez-Solorzano said that, in 2004, Bey received between 150 and 350 pounds per month. Bey's wife, Myra Lewis, testified that she owned the gun seized from Bey's car and had put it in the car. However, she testified that she had not placed a bullet in the chamber of the firearm, although agents found a bullet there when the gun was seized.

At the close of the trial, the district court instructed the jurors that if they found Bey guilty of Count One, the conspiracy charge, they would then be asked to determine the quantity of marijuana involved in the overall

3

conspiracy. The court instructed the jury that "all members of a conspiracy are responsible for acts committed by the other members as long as those acts are committed to help advance the conspiracy, and are within the reasonably foreseeable scope of the agreement."

The verdict forms provided to the jurors gave them the option of finding Bey guilty of a conspiracy involving "distribution of" 1000 kilograms of marijuana, 100 kilograms of marijuana, or less than 100 kilograms of marijuana. For Count Two, which charged possession with intent to distribute marijuana, the jury had the option of finding that Bey "possessed or aided and abetted the possession of" 100 kilograms or less than 100 kilograms of marijuana with intent to distribute. The jury convicted Bey of participating in a conspiracy involving at least 100 kilograms of marijuana, possession with intent to distribute at least 100 kilograms of marijuana, and unlawful possession of a firearm by a convicted felon.

At sentencing, Bey argued first that that "the default penalty provision in § 841" (in his case, a ten-year maximum) should apply because, for both Counts One and Two, the question posed to the jury on the verdict form concerning the amount of marijuana did not track the wording in the indictment or the jury instructions. Therefore, he argued, the jury's finding did

4

not comply with Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), which requires that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  The district court rejected Bey's argument, found him responsible, for sentencing purposes, for over 3000 kilograms of marijuana, and found that he had possessed the gun in connection with drug trafficking.  The resulting guideline calculation produced an advisory guideline range of 202-365 months.  The court imposed concurrent sentences of 324 months for Counts One and Two, and a concurrent ten-year sentence for Count Four, the firearm offense.

On appeal, Bey first contends that use of the terms "distribution" and "possession" relating to Counts One and Two on the verdict form amounted to a constructive amendment of the indictment.  "The Fifth Amendment . . . guarantees that a criminal defendant will be tried only on charges in a grand jury indictment . . . [and] . . . only the grand jury may broaden or alter the charges in the indictment." United States v. Randall, 171 F.3d 195, 203 (4th Cir. 1999) (internal quotations omitted). "When the government, through its presentation of evidence or its argument, or the district court, through its instructions to the jury, or both, broadens the bases for conviction beyond those charged in the indictment, a constructive amendment –

5

sometimes referred to as a fatal variance – occurs." United States v. Malloy, 568 F.3d 166, 178 (4th Cir. 2009). A fatal variance is per se error, and must be corrected on appeal even if the appellant has not preserved it by objection. Randall, 171 F.3d at 203 (citing United States v. Floresca, 38 F.3d 706, 712-13 (4th Cir. 1994) (en banc)). Any variance which does not "change the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment," is not a fatal variance because it "does not violate a defendant's constitutional rights . . . either by surprising him at trial and hindering the preparation of his defense, or by exposing him to the danger of a second prosecution for the same offense." Malloy, 568 F.3d at 178.

Bey did not raise this issue in a timely manner below. Objections to jury instructions must be made before the jury begins deliberations to be preserved for appeal. Fed. R. Crim. P. 30(d); United States v. Robinson, ___ F.3d ___, 2010 WL 4869770, at *10 (4th Cir. Dec. 1, 2010); United States v. Cardinas Garcia, 596 F.3d 799, 798 (10th Cir.), cert. denied, 130 S. Ct. 3299 (2010). Therefore, this Court's review of the issue is for plain error. Garcia, 596 F.3d at 798.

"When reviewing a jury verdict form," [the appeals court] must determine whether it, along with the instructions read to the jury, as a whole adequately stated the applicable

6

law." Id. at 799. Generally, a minor error will not be enough to confuse a jury when the instructions as a whole state the law clearly. Id. at 800; but see United States v. Mouling, 557 F.3d 658, 665 (D.C. Cir.) (Apprendi error in jury instructions cannot be cured by including drug quantity on verdict form), cert. denied, 130 S. Ct. 795 (2009).

Because of the divergence between the offenses charged in Counts One and Two and the verdict form's wording of the questions addressing the quantity of marijuana involved in each count, Bey argues that the questions addressed two offenses different from the charged offenses and the district court committed reversible error in entering judgment on the jury's verdict. Bey concedes that the district court properly instructed the jury on the charged offenses and that the parties argued the law correctly to the jury. However, with respect to Count One, he contends that the verdict form "was, at best, confusing and, at worst, constituted a fatal variance[.]" With respect to Count Two, Bey argues that the verdict form created a fatal variance by "unlawfully broaden[ing] the deliberations such that [he] could have been convicted for an offense for which he was not indicted."

The record discloses that the jurors convicted Bey of the offenses charged in Counts One and Two after they were properly instructed by the court about the elements of

7

conspiracy and possession with intent to distribute, and the government presented evidence that supported each charge. The wording in the verdict form questions directed jurors to the amount of marijuana involved in each offense and did not create a fatal variance. The jurors addressed those questions only after they decided Bey's guilt. Thus, Bey has not shown error, much less plain error.

Bey next contends that the jury's finding as to the quantity of marijuana involved in Counts One and Two did not comply with Apprendi. Under Apprendi, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for the crime beyond the prescribed statutory maximum must be submitted to the jury and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490. Thus the government must prove, and the jury must find, drug quantities that trigger the higher statutory maximum sentences set out in § 841(b)(1)(A) and (B). Because Bey raised this legal issue at sentencing, review is de novo. United States v. Mackins, 315 F.3d 399, 405 (4th Cir. 2003).

Bey first claims that it was error under Apprendi for the jury to find, on the conspiracy count, that Bey was involved with 100 kilograms of marijuana because it did not match the 1000 kilograms charged in Count One. The jurors were instructed to find the amount of marijuana involved in the conspiracy as a whole and the amount attributable to Bey personally. They did

8

both. No <u>Apprendi</u> error is discernible in this regard. <u>See</u> <u>Collins</u>, 415 F.3d at 312 (jury must determine the quantity of drugs attributable to the defendant individually, not just the quantity involved in the entire conspiracy).

Bey also argues that, because the indictment charged a conspiracy to possess with intent to distribute in Count One and possession with intent to distribute in Count Two, the jury's determination as to the "distribution" and "possession" of a quantity of marijuana in connection with Count One and Count Two, respectively, was not a determination related to the offenses charged in the indictment. Therefore, he argues, the jury made no determination of marijuana quantity for Counts One and Two, and the district court should have applied the default provision in § 841(b), that is, subsection (b)(1)(D), which applies when the offense involves less than fifty kilograms of marijuana and provides a statutory maximum (with a prior drug conviction) of ten years.

We conclude that the jury was correctly instructed about the elements of the charged offenses and that the imprecise language on the verdict form was not so confusing or misleading as to call the jury's finding into question. The verdict form gave the jury the option of finding, for each offense, that Bey was involved with less than 100 kilograms of marijuana, an option that was added at the request of Bey's

attorney. The jury instead found that Bey was involved with at least 100 kilograms for each count. Thus, the jury made the required finding in compliance with Apprendi.

Bey challenges the two-level sentencing enhancement he received under USSG § 2D1.1(b)(1) for possession of a firearm during the offense. The increase is authorized if the defendant possessed a dangerous weapon during the offense. Application Note 3 to § 2D1.1 explains that the enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." The district court's factual finding that Bey possessed a dangerous weapon during the offense is reviewed for clear error. United States v. McAllister, 272 F.3d 228, 234 (4th Cir. 2001). The government "need only show that the weapon was present during the relevant illegal drug activity." Id.

Bey maintains that there was no evidence that he constructively possessed the gun seized from his car in light of his acquittal on the § 924(c) charge and his wife's testimony that she purchased the gun and inadvertently left it in the car. However, immediately following his arrest, Bey told the agents he was responsible for the gun's presence in his car. Bey's wife, Myra Lewis, testified at trial that she had not placed a bullet in the chamber. The case agent testified that, along with the gun, two magazines of hollow-point bullets were seized,

and that the gun had a bullet in the chamber. Therefore, in making its finding, the district court could infer that Bey had placed the bullet in the gun. The district court did not clearly err when it decided that Bey possessed the firearm during the drug offense.

Last, Bey argues that the court erred when it made a two-level enhancement under § 2D1.1(b)(1) for possession of a firearm and a four-level enhancement for using or possessing a firearm in connection with another felony offense under § 2K2.1(b)(6), with both enhancements being based on the same gun. Bey contends that the enhancement under § 2K2.1(b)(6) was unreasonable and was reversible error in light of his acquittal on the § 924(c) charge.

The district court correctly adopted the probation officer's calculation of Bey's offense level, which started with separate offense level calculations for Counts One and Two (grouped together in one group under USSG § 3D1.2(c)) and Count Four (placed in a separate group). See USSG § 3D1.1(a)(2) (Procedure for Determining Offense Level on Multiple Counts). A firearm enhancement was correctly made in the calculation for both Counts One/Two and Count Four. The combined offense level was then determined as directed in § 3D1.1(a)(3). No double counting error occurred.

11

We therefore affirm the sentence imposed by the district court. We grant Bey's motions to file two separate pro se supplemental briefs and have considered the additional issues raised there, but find no merit in them. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

12